Mildred WALLACE, Independent Execu-
trix of the Estate of Margaret Irene
Turriff, Deceased, Appellant,

v.

James A. TURRIFF, Jr. and Evelyn
Mills, Appellees.

No. 875.

Court of Civil Appeals of Texas,
Tyler.

Dec. 18, 1975.

Rehearing Denied Jan. 22, 1976.

James K. Peden, III, Strasburger, Price,
Kelton, Martin & Unis, Dallas, for appel-
lant.

Stephen A. Brutsché, Geary, Brice, Bar-
ron & Stahl, Dallas, for appellees.

McKAY, Justice.

This is a will case wherein James A.
Turriff, Jr. and Evelyn Mills, appellees,
brought suit against the Executor of the
Estate of Margaret Irene Turriff, Deceased,
their step-mother, praying that a joint and
mutual will executed by their father, James
A. Turriff, Sr., and Margaret Irene Turriff
be specifically enforced against the estate
of Margaret Irene Turriff, in accordance
with the agreement of the parties, that a
trust be imposed upon the assets of the
estate in favor of appellees and that the
agreement be carried out in all respects
according to its contents and provisions.
The trial court rendered judgment for ap-
pellees and made certain findings [1]; and
appellant, as executor, brings this appeal.

James A. Turriff, Jr. and Evelyn Mills
are the children of James A. Turriff from a
marriage prior to his marriage to Margaret
Irene Turriff. Appellees were adults at the

1. "1. The joint and mutual will executed by
James Turriff, Sr. and Margaret Irene Tur-
riff, Deceased, on June 24, 1947, is contrac-
tual;

"2. Under the terms of such contract,
Plaintiffs herein are entitled to all property
owned by Margaret Irene Turriff, Deceased,
at the time of her death on May 28, 1974;

"3. The holographic will executed by
Margaret Irene Turriff, Deceased, on May
24, 1973, is repugnant to the said joint and
Will, (sic) and the bequests contained there-
in should be given no effect;

"4. A constructive trust should be im-
posed upon all of the assets of Margaret
Irene Turriff, Deceased, for the benefit of
Plaintiffs;

"5. After the payment of all debts and
funeral expenses of Margaret Irene Turriff,
Deceased, as well as the payment of all
proper expenses of administration, the De-
fendant, MILDRED WALLACE, Indepen-
dent Executrix with bond of the Estate of
Margaret Irene Turriff, Deceased, should be
compelled to transfer to the possession of
Plaintiffs herein all personal property re-
maining in said Estate, in equal shares;"

time James A. Turriff and Margaret Irene Turriff married, and they were never adopted by Margaret Irene Turriff. Margaret Irene Turriff had no children.

On June 24, 1947, James A. Turriff and Margaret Irene Turriff executed a joint and mutual will which provided in Part I, paragraph one:

"It is our will and desire, and the will and desire of each of us, that the survivor of us, James A. Turriff or Margaret Irene Turriff, as the case may be, shall have all of the estate of every character and description, real, personal, or mixed, which either or both of us may own or have an interest in at the time of the death of the one of us dying first, hereby intending to include both community and separate property."

After providing that the survivor should have the right to occupy any property thereafter acquired as homestead, and have the right to sell it, the will further provided in Part I, paragraph three:

"For the considerations and benefits herein derived by the survivor, we and each of us agree that at the death of the survivor of either of us all the property, both real and personal, that the survivor may die seized and possessed of, will go to and become the property of Evelyn Bernice Mills, wife of Sidney Mills, and her brother, James A. Turriff, Jr. Said property shall be given share and share alike."

James A. Turriff died on February 4, 1950, and Margaret Turriff probated the joint and mutual will. She became independent executrix of the estate and took possession of all of the property of the estate. The value of the estate was listed in the inventory and appraisement at $5,000.00.

Margaret Turriff executed a holographic will on May 24, 1973, and designated Mildred Wallace, appellant, as independent executrix, and upon application of Mildred Wallace such will was admitted to probate as the Last Will and Testament of Margaret Irene Turriff. In the holographic will specific bequests of $2,500.00 each were made to James A. Turriff, Jr. and Evelyn Turriff Mills. Other portions of the will distribute the remainder of the estate, which consisted of savings accounts, certificates of deposit and personal effects, to her brothers and sisters, and their spouses and their children and grandchildren—the nieces, nephews, great-nieces and great-nephews of Margaret Irene Turriff.

Five thousand ($5,000.00) dollars in cash of the assets of the Estate of Margaret Irene Turriff is attributable to the property owned by either Margaret Irene Turriff or James A. Turriff, or both of them, at the time of the death of James A. Turriff on February 4, 1950. The remainder of her estate consists of property independently acquired by her after the death of her husband, two-thirds of which was derived from real estate devised to Margaret Turriff by a friend.

Appellant brings seven points of error which, taken together, present only one question: Did the joint and mutual will of James A. Turriff and Margaret Irene Turriff attach to and include property acquired by Margaret Irene Turriff after the death of James A. Turriff?

It is not questioned that the will was a joint and mutual will and was contractual.

Appellant relies principally upon the case of *Murphy v. Slaton*, 154 Tex. 35, 273 S.W.2d 588 (1955) in which Murphy and his wife executed a joint and mutual will in which paragraph one read as follows:

"It is our will and desire that *the survivor* of us, B. H. Murphy or Annie E. Murphy, as the case may be, *shall*, with the rights and authority below given, *have all the estate of every description*, real, personal or mixed, *which either or both of us may own at our death*, to be used, enjoyed, occupied and conveyed by such survivor for and during his or her life time, as the case may be, *and that upon the death of such survivor any of such estate then remaining shall be divided among the*

*persons following* and in the following manner, and subject to all the conditions and limitations hereinafter to be named, to wit: . . ." (Emphasis added.)

The *Murphy v. Slaton* opinion laid down the general rule:

"While the question is not free from difficulty, and we recognize that the makers of a joint and mutual will, or of mutual wills, have the right and power to provide that all of the property owned by the survivor at his death shall pass under and be bound by the terms of their will, we do not believe such effect should be given to mutual wills unless the intention to do so is set forth in the will by very plain, specific and unambiguous language. In the absence of such clearly expressed intention we feel that the better reasoning supports the rule that after-acquired property owned by the survivor in his or her individual right does not pass . ."

The court held that after-acquired property was not covered or included in the language of the will in *Murphy* because the language "could only be with reference to the estate owned at the time of the death of the first one to die," and "It is only at this time that there will be a 'survivor of us' who can take 'all the estate' and who can 'use, enjoy, occupy or convey' during his or her lifetime." The court found no language evidencing an intention to dispose of the estate owned by the survivor at death.

Appellees cite and rely upon *Weidner v. Crowther,* 157 Tex. 240, 301 S.W.2d 621 (1957). The joint will in *Weidner* contained the following provisions:

"Second: We mutually will, direct and devise, that after the death of either of us, all our property and estate, real, personal or mixed, and *wether* deemed common or separate estate, shall be inherited by and shall at once pass into the unrestricted possession of the last survivor of either of us in fee simple.

"Third: We hereby further will and direct that after the death of the last survivor of us all our property and estate, real, personal or mixed, common or separate, shall be inherited and divided equally, share and share alike, among our three children, to-viz.: . . ."

Chief Justice Calvert, writing for the court in *Weidner,* analyzed and distinguished *Murphy v. Slaton, supra.* The *Weidner* opinion says that paragraphs second and third which deal with "our property" should be interpreted as though each party was making a separate disposition of his or her property only, and when these provisions are so interpreted, by the second paragraph each intended to make disposition of his or her property if he or she was the first to die with fee simple title going to the survivor, and by paragraph third, each undertook to dispose of his or her property if he or she was the last to die. The court then said:

"When the will is thus interpreted the contract between the parties, incorporated in and evidenced by the will, appears clearly to have been that if the first to die would devise to the survivor the fee simple title to all property, separate and community, owned at death, the survivor would devise in fee simple to the three children equally all property, separate and community, owned at death. In carrying that contract into effect each of the parties expressed in the will in 'plain, specific and unambiguous language' the intention that all property, separate and community, owned by the survivor at death, *which necessarily included* after-acquired property, should be inherited by the three children in equal shares . ." (Emphasis added.)

In the instant case the Turriffs made a contract almost identical in substance to that made by the Weidners. In Part I, paragraph one, the Turriffs agreed that the survivor should have all of the estate of the first to die, real, personal or mixed, separate or community; in Part II, paragraph three, they agreed that at the death of the survivor, "*all of the property, both real and*

personal, that the survivor may die seized and possessed of, will go to and become the property of Evelyn Bernice Mills . . . and . . . James A. Turriff, Jr." (Emphasis added.)

We believe the language of the will in the instant case is distinguishable from that in *Murphy v. Slaton, supra,* and *Harrell v. Hickman,* 147 Tex. 936, 215 S.W.2d 876 (1948). We also believe that our view of this case is consistent with the rule laid down in *Murphy v. Slaton, supra,* and restated in *Weidner v. Crowther, supra,* that "makers of mutual wills can make them operative on all property owned at the death of the survivor by expressing an intention to do so in 'plain, specific and unambiguous language'". *Thrash v. Boggs,* 346 S.W.2d 660 (Tex.Civ.App., Ft. Worth, 1961, writ ref'd, n. r. e.).

We agree with the findings of the trial court that the language of the Turriff will is contractual and that it was the intention of the parties that all property owned at the death of the survivor should go to appellees. There is no language referring to the estate as it existed at the death of Turriff as being the only property to be received by appellees at the death of the survivor. We disagree with appellant's contention that "the" before the word "property" refers to or limits the estate to only that which existed at the time of the first to die, and is only that which is to be passed to appellees. It appears that "the" before the word "property" refers to what follows: "the property, both real and personal, *that the survivor may die seized and possessed of*". (Emphasis added.) There is no ambiguity in the context so used.

We are of the opinion and so hold that the language of the joint and mutual will expresses a plain, specific and unambiguous intention that all property of the survivor, including after-acquired property, passes under the joint and mutual will executed by the Turriffs. All of appellant's points of error are overruled.

Judgment of the trial court is affirmed.

MOORE, Justice (dissenting).

I dissent. The contractual will made the basis of this suit, when reduced to its simplest terms, shows that the testators agreed that upon the death of the first to die all community and separate property owned by the deceased was to pass to the survivor, and upon the death of the survivor "the property" was to pass to Bernice Mills and James A. Turriff, Jr. The question is: What property did the parties intend to bequeath when they referred to it as "the" property? The word "the" is a word of limitation. It is a definitive word and when used before nouns it has a specifying and particularizing effect as opposed to the indefinite or general effect. It determines what particular thing is meant; that is, what particular thing we are to assume to be meant. 41A Words and Phrases, p. 76 et seq. (citing cases). Webster says the article "the" is "used as a function word to indicate that a following noun * * * refers to * * * something previously mentioned or clearly understood from the context or the situation." Webster's Seventh New Collegiate Dictionary. In the instant case the parties agreed that upon the death of the survivor "the" property would pass to Bernice Mills and James A. Turriff, Jr. At the time the testators bequeathed "the" property, the only specific property existing at that time was the property they had theretofore bequeathed to each other in a previous paragraph of the will. Certainly, the parties could not have intended to bequeath after acquired property because, at that time, no such property existed. Therefore, it seems obvious that when the parties bequeathed "the property" they must have intended to limit the bequest to the specific property they had theretofore bequeathed to each other. The will does not say that "all property" owned by the survivor was to pass to the devisees nor does the language used by the testators refer to property in general terms. On the contrary the testators limited the bequest to "the" property which could only mean they had in mind

certain specific property. In this connection it is significant to note that while the parties provided all property, community as well as separate, was given to the survivor, they did not provide that separate property acquired by the survivor was to pass to the named devisees. Consequently, I cannot agree with the conclusion reached by the majority holding that by the use of the term "the property" the testators intended that the bequeathed property together with all property which might thereafter be acquired by the survivor was to pass to the named devisees.

In any event, the language used by the testators fails to satisfy the requirement laid down by *Murphy v. Slaton, supra,* requiring that in order for after acquired property of the survivor to pass under the will, the intention to do so must be set forth in the will in very plain, specific and unambiguous language. In the absence of such clearly expressed intention, I feel the better reasoning supports the rule that after acquired property owned by the survivor in his or her own individual right does not pass.

Accordingly, I would reverse and render judgment in favor of the appellant.