Earlene KNOLLE, Individually and as Executrix of the Estate of Ruby K. Hunt, et al., Appellants,

v.

Lacy H. HUNT, II, et al., Appellees.

No. 1000.

Court of Civil Appeals of Texas, Tyler.

May 5, 1977.

Rehearing Denied June 9, 1977.

M. M. Stripling, Stripling & Sutton, Nacogdoches, Shannon H. Ratliff, McGinnis, Lochridge & Kilgore, Austin, Marion G. Holt, Holt, Tatum & Meehan, Nacogdoches, for appellees.

DUNAGAN, Chief Justice.

This is a joint, mutual and contractual will case in chief involving secondary issues concerning trial amendment of pleadings and the status of after-acquired property. This suit was brought by Lacy H. Hunt, II, Andrew W. Hunt, Jr. and William T. C. Hunt (hereafter collectively referred to as appellees), all of which were beneficiaries under an alleged contractual will. The suit was brought against numerous individuals, all of whom in some form or fashion were beneficiaries under a will made subsequently to the alleged contractual will. Only the defendants who are now appellants need be named, and they are as follows: Earlene Knolle, individually and as executrix of the will and estate of Ruby Hunt, deceased, Myrtle Knolle, B. Frank Knolle, Nancy Knolle, Suzy Knolle, Clemmie Williams and the Gulf Coast Presbytery (hereafter collectively referred to as appellants). Appellees (plaintiffs below) in their pleadings sought a declaratory judgment declaring that the joint will of Lacy and Ruby Hunt, husband and wife, was mutual and contractual, and in relation thereto appellees sought the enforcement of their derivative contract rights, the imposition of a constructive trust upon all estate property, and an injunction freezing all estate property until disposition of this suit.

Trial was before the court, without jury, and the trial court, after considering the pleadings, evidence and argument of counsel, both oral and by written brief, rendered its judgment, holding, among other things, that:

(1) The joint will of Lacy H. Hunt and wife, Ruby Hunt, was mutual and contractual;

(2) The joint codicil executed several months later by the same persons was also mutual and contractual;

James S. Robertson, Jr., Charles F. Potter, Potter, Guinn, Minton & Dickerson, Tyler, S. Moss Adams, Jr., Nacogdoches, John G. Payne, Pye & Dobbs, Tyler, W. James Murdaugh, Jr., Asst. Atty. Gen., Austin, for appellants.

(3) Appellees herein (plaintiffs below) were the owners of equitable title to one-half of all properties owned by Ruby K. Hunt at her death "save and except such properties as were inherited by Ruby K. Hunt from her mother's estate"; and that

(4) A constructive trust ". . . be impressed upon all property owned by Ruby K. Hunt at the time of her death" except that property which she inherited from her mother.

Both sides appeal. Appellants Myrtle Knolle and Earlene Knolle (hereafter sometimes called the "Knolle sisters") and Gulf Coast Presbytery (hereafter sometimes referred to as the "Presbytery") filed briefs. They contend that the trial court erred in holding that the joint will and codicil were mutual and contractual and erred in impressing a constructive trust on "all the property owned by Ruby K. Hunt at her death." The Knolle sisters also contend in their second point of error that the trial court erred in denying their motion for leave to file a trial amendment.

Appellees gave notice of limitation of appeal and thereby bring one cross-point alleging that the trial court erred in holding that the property inherited by Ruby K. Hunt from her mother was not subject to the provisions of the joint, mutual and contractual will.

We affirm in part and reverse and render in part.

On February 21, 1969, Lacy H. Hunt and his wife, Ruby Hunt, executed a joint will. Paragraphs II and III of the joint will provided as follows:

"II

"I, LACY H. HUNT, do give, devise and bequeath unto my beloved wife, RUBY HUNT, all property of every kind or character, of which I may die seized and possessed, real, personal and mixed, *subject only to the provisions of Paragraph IV of this will* . . . ..

"III

"I, RUBY HUNT, do give, devise and bequeath unto my beloved husband, LACY H. HUNT, all property of every kind or character, of which I may die seized and possessed, real, personal and mixed, *subject only to the provisions of Paragraph IV of this will* . . . .." [Emphasis added.]

In the following paragraph IV, the joint will provided that if Lacy and Ruby Hunt died in a common catastrophe or failed to survive each other by thirty days, then the estate would pass:

(1) An undivided one-half to Earlene Knolle and Myrtle Knolle, share and share alike;

(2) An undivided one-half to appellees in the indicated amounts: (a) 50% of said one-half interest to Lacy H. Hunt, II; (b) 25% of said one-half interest to Andrew W. Hunt; (c) 25% of said one-half interest to William T. C. Hunt. In the event Lacy Hunt and Ruby Hunt did not survive each other as stated in the joint will, paragraph IV provided that Lacy H. Hunt, II, was to be the independent executor. Paragraph IV finally made the following provision which is crucial to this appeal:

"It is our further will and desire that at the death of the survivor of us, whether in a common catastrophe *or otherwise*, that the estate remaining in the hands of such survivor of us at the time of his or her death shall vest or pass as in *this paragraph above provided*, with the appointment of the Executor as in this paragraph provided." [Emphasis added.]

On September 5, 1969, Lacy and Ruby Hunt executed a codicil which solely provided in relation to paragraph IV of the joint will the following:

"It is our will and desire that at the death of the survivor of us, Lacy H. Hunt and wife, Ruby Hunt, irrespective of which one of us may survive the other, that *all property* which said survivor may be seized or possessed at the time of his or her death shall pass to and be vested in the parties named in Paragraph IV of our aforesaid Will and in the proportionate interest as set out in Paragraph IV, and we so will, devise and bequeath our property upon the happening of the death of the survivor of us." [Emphasis added.]

The codicil expressly stated that it was not "in any way changing or altering" the 1969 joint will but that it was making "additional provisions thereto."

Lacy H. Hunt died on September 28, 1969. His wife, Ruby Hunt, qualified as independent executrix, and the joint will and codicil were admitted to probate on October 13, 1969. Ruby Hunt took as the sole beneficiary under the joint will.

On June 12, 1970, Ruby Hunt made a new will through the same attorney who had prepared the 1969 joint will. On May 31, 1973, Ruby Hunt made a new and final will, changing the disposition of her estate and revoking all her previous wills. This final will provided that appellants Earlene and Myrtle Knolle were to each receive 25% of the estate, and other bequests were made to other persons and organizations, most of which were not provided for in the 1969 joint will. Earlene Knolle was appointed independent executrix under the final will. Appellee, Lacy H. Hunt, II, was named to receive only 5% of Ruby Hunt's estate, with the two other appellees receiving nothing under the final will.

Ruby Hunt died in August, 1974, and Earlene Knolle made an application to probate the final will in Nacogdoches County in total disregard of the 1969 joint will. Appellees thereafter instigated two suits, the first suit contesting Earlene Knolle's right to be appointed independent executrix, and the second suit to enforce certain provisions of the 1969 joint will providing for appellees' share. Both suits were consolidated for trial purposes, but are appealed separately. This appeal stems from the second suit concerning appellees' rights under the 1969 joint will.

Appellants contend that the appellees did not sustain their burden of proof in proving that the joint will and codicil were mutual and contractual. Appellants Knolle sisters contend that by the terms of the joint will, Ruby Hunt received a fee simple estate in the property which she inherited from her deceased husband, Lacy Hunt, as opposed to a life estate, and that this creates a presumption that the 1969 joint will was not mutual and contractual. Appellant Presbytery contends that the 1969 joint will was not contractual except in the event of a common disaster, relying upon the 1969 joint will's use of certain pronouns and words which are of precatory as opposed to mandatory nature, and relying upon a limited application of the codicil provisions. Therefore, appellants generally contend that the 1969 joint will and codicil are not themselves sufficient proof of their mutual and contractual nature, and that beyond this appellees failed to carry their burden of proof. We disagree.

A joint will may be proven to be mutual and contractual by its own terms and provisions and, as such, proven to have been executed pursuant to an agreement between the joint makers. *Dougherty v. Humphrey*, 424 S.W.2d 617, 621 (Tex.Sup. 1968); *Murphy v. Slaton* 154 Tex. 35, 273 S.W.2d 588, 593 (1954). Chief among the criteria which the Supreme Court considered in handing down this rule was that the will set forth "a comprehensive plan for disposing of the whole estate of either or both" of the joint makers. *Murphy, supra.* Lacy and Ruby Hunt executed a joint will containing provisions whereby the first to die bequeathed to the survivor of them all of his or her property "subject only to the provisions of paragraph IV." Paragraph IV contained two conditional provisions. The first provision provided for the disposition of the estate in the event there was no survivor, and this was followed by a detailed and comprehensive disposition. The second provision provided that:

"It is our further will and desire that at the death of the survivor of us, whether in a common catastrophe *or otherwise*, that the estate remaining in the hands of such survivor of us at the time of his or her death shall vest or pass as in this paragraph above provided, . . . ." [Emphasis added.]

In the codicil executed September 5, 1969, Lacy and Ruby Hunt affirmed the dispositive provisions of paragraph IV and made "additional provisions" that the estate was to include "all property" which the survivor

owned at "his or her death". Thus, Lacy and Ruby Hunt jointly created a disposition of their estates that was comprehensive, complete, clear and definite.

Appellants cite several cases dealing with wills containing characteristics similar or identical to the 1969 joint will's testamentary use of the pronouns "I," "we," "our" and "us," and appellants urge that the use of these pronouns in the context in which they are used in the 1969 joint will supports a holding that the 1969 joint will was not mutual and contractual, as so found in the cases which appellants cite. Appellant Presbytery contends, citing cases, that the testamentary use of the pronoun "I" in the second and third clauses of the 1969 joint will is evidence that the will provided for separate, not joint, dispositions except in the event of a common catastrophe. Concerning the testamentary use of plural pronouns, the cases cited held that the use of "we," "our" and "us" in a joint will does not necessitate a finding that the joint will is mutual and contractual. While we agree with the result reached in each of the cases cited by appellants, we do not feel those cases are controlling here.

The 1969 will is without dispute a joint will. In the second and third clauses, Lacy and Ruby Hunt, respectively, left their property to the other using the words "I . . . give, devise and bequeath . . subject only to the provisions of Paragraph IV of this will." As mentioned earlier, paragraph IV provided for the distribution of the joint estate in the event Lacy and Ruby Hunt died in a common catastrophe (defining common catastrophe to mean that the "death of the survivor of us should follow the death of the first to die within thirty days"). However, paragraph IV additionally provided that the joint estate was to pass in the same manner "at the death of the survivor of us, whether in a common catastrophe *or otherwise*." [Emphasis added.] We think the intent of Lacy and Ruby Hunt was to make a joint, mutual and contractual distribution of the estate regardless of who survived the other, and regardless of how long the period of survival. There could be no other purpose for such a "subsequent provision".

The testamentary use of the plural pronouns "we," "our" and "us" is both extensive and uniform. Lacy and Ruby Hunt declared that all property owned by them or either of them was community property "irrespective of origin". There is evidence that Lacy Hunt owned separate property received through inheritance. The disposition to be made after the death of the survivor was an equal distribution among collateral heirs on *both* sides of the family. The will itself and our limited knowledge of the circumstances surrounding the will lead us to adopt the language of the Supreme Court in *Nye v. Bradford*, 144 Tex. 618, 193 S.W.2d 165, 168 (Tex. 1946), followed in *Murphy v. Slaton, supra*, as follows:

"The division made is apparently equal, . . . . The will treats the property of the testators as one, and the dispositions made are joint gifts from the testators, dividing the property equally . . . . A will like that could not have been made without agreement between the testators that it should be so made. Its very terms are evidence that an agreement was made. . . ."

Appellant Presbytery attacks the testamentary use of the words "will and desire" in the *last* sentence of paragraph IV of the will, complaining that the words as used therein are precatory, being words of request, as opposed to being mandatory or words of direction. We disagree. First of all, appellant Presbytery selectively makes this attack. In other portions of its brief appellant relies on the *first* sentence of paragraph IV and also the codicil to affirmatively support its argument that the 1969 will was contractual only in the event of death by common catastrophe. The first sentence of paragraph IV begins with "It is our further will and desire . . ." The first sentence of the dispositive provision in the codicil begins with "It is our will and desire . . . ." Appellant relies on these phrases to be mandatory indications while in the last sentence of paragraph IV appellant alleges that the same words are precatory indications.

While we suppose that the same words can be used in different senses in separate parts of the will, as appellant's brief impliedly suggests, we do not believe such is the case here. The rule is quite clear that ". . . Texas cases, including both those that give to precatory words a mandatory effect and those that construe such words according to their ordinary or natural meaning, are decided by ascertaining the testator's intention from the language used in the will, taking into consideration the immediate context and the context of the entire instrument. . . ." *Byars v. Byars*, 143 Tex. 10, 182 S.W.2d 363, 365 (1944). Also see: *Goldring v. Goldring*, 523 S.W.2d 749, 757 (Tex.Civ.App.-Fort Worth 1975, ref'd n.r.e.); *Woods v. Wedgeworth*, 453 S.W.2d 385 (Tex.Civ.App.-El Paso 1970, n.w.h.); *Henry v. Curb*, 430 S.W.2d 29 (Tex. Civ.App.-Eastland 1968, ref'd n.r.e.).

The mother of the appellees (sister-in-law of Lacy and Ruby Hunt) testified that there was an agreement between Lacy and Ruby Hunt that half of the estate would go to Ruby Hunt's sisters and half would go to Lacy Hunt's nephews. Lacy and Ruby Hunt's accountant testified that subsequent to Lacy Hunt's death Ruby Hunt had stated to him that the 1969 joint will was meant to divide everything equally. We recognize that appellees' mother, although not a party to this suit, was at least an interested witness due to the status of her sons in this lawsuit. Nevertheless, her testimony is supported by the testimony of Ruby Hunt's accountant as well as by the scheme of distribution in the will.

Appellants Knolle sisters contend that Ruby Hunt took an unlimited fee simple interest in Lacy Hunt's estate which became vested by law; and, therefore, Ruby Hunt as the survivor "had the primary right . . . to revoke the former joint will, if she so desired, and execute a new will providing for the distribution of her fee simple title upon her death." In furtherance thereof appellants Knolle sisters state, "In every case found where the court has determined that the terms of a will were conclusive evidence of its contrac-

tual character, the devise to the surviving spouse has been a traditional life estate with limited powers of use." We recognize the rationale behind appellants' argument, but we feel it is erroneous. In the case of *Harrell v. Hickman*, 147 Tex. 396, 215 S.W.2d 876 (1948), the Supreme Court dealt with a similar contractual will. The devise to the survivor was not a life estate, limited or otherwise, but was a devise in fee simple. The Supreme Court wrote at page 878 as follows:

". . . That estate was limited, however, in the fourth paragraph by language which had the effect of converting it into a conditional fee or, as it is sometimes called, a defeasible fee, the condition of defeasance being that in the event T. M. Harrell [survivor] should die seized and possessed of any of the property, then such property should pass to and vest in the various institutions and individuals named in the will . . . [citing cases]. No provision in the will or contract places any limitation whatever upon the right of T. M. Harrell during his lifetime to dispose of the estate in any manner he might see fit. The will evidences that each of the testators reserved in himself or herself, should he or she become the survivor, the absolute right to dispose of the estate as such survivor might desire, with the single exception that the survivor could not make a disposition thereof by will contrary to that made in their joint will."

The will in the *Harrell* case was interpreted by the Supreme Court to mean that the contractual testamentary disposition applied only to "the remainder of our property, of which the survivor of us shall die seized and possessed . . . ." [quoting from the will itself], subject only to the right of the survivor to dispose of the estate during his or her lifetime. The Supreme Court held in the *Harrell* case, as quoted above, and we so hold in this case, that this right to dispose of the estate during the survivor's lifetime did not include the right to make a new will disposing of the property differently than disposed of in the contractual will.

Lacy and Ruby Hunt's joint will contained the provision that "the estate remaining in the hands of such survivor at the time of his or her death shall vest or pass" as provided in Paragraph IV. We hold that the use of these words brings this case within the rule laid down in the *Harrell* case. There is logic behind the *Harrell* case which needs mentioning. It is of secondary importance what title the survivor receives through the contractual will. Of primary importance is the fact that the will is contractual, the testators having agreed to the disposition of the estate remaining in the hands of the survivor. The fact that a survivor holds a life estate in the remaining property may give more immediate effect to the interest of the beneficiaries as opposed to the holding of a conditional fee simple title, but the agreed disposition of the estate remaining in the hands of the survivor at death creates an obligation which is controlling over, and not restricted by, the type of title held by the survivor for the surviving period. Furthermore, the fact that the survivor may or may not make an "inter vivos" disposition of the estate does not itself affect the obligation that takes effect when the survivor takes under a joint, mutual and contractual will.

In their second point of error appellants Knolle sisters complain that the trial court erred in denying leave to file their trial amendment. After the evidence had been closed the Knolle sisters sought to amend their pleadings to plead alternatively that they were each entitled to 25% of the estate (or 50% collectively) regardless of whether the trial court determined that the 1969 joint will was contractual or that the separate 1973 will of Ruby Hunt should be enforced. Appellants Knolle sisters plead in their offered trial amendment that "The percentage interest so bequeathed to them they are entitled to receive regardless of whether the joint will is held to be contractual or the separate will of Ruby K. Hunt is enforced . . . . Accordingly, whatever judgment is rendered in this case the percentage interest of such parties must stand and said interest be distributed to them when there is no further need for adminis-

tration, and no injunctive relief or trust is proper with reference to the said percentage interest." Appellants Knolle sisters further state in their brief that, "The question before this court, as was previously before the trial court, is simply which will is to be given effect. Once that determination is made, the clear provisions for distribution in the will which is given effect cannot be altered or varied."

The law is quite clear that before an appellate court designates as error the trial court's denial of a trial amendment, an abuse of judicial discretion must be shown. *Ka-Hugh Enterprises, Inc. v. Ft. Worth Pipe & Sup. Co.*, 524 S.W.2d 418, 422 (Tex. Civ.App.-Ft. Worth 1975, ref. n.r.e.); *Tuck v. Tuck*, 509 S.W.2d 656, 658 (Tex.Civ.App.-Austin 1974, ref. n.r.e.).

The tenor of the Knolle sisters' trial amendment was that no constructive trust or injunction is necessary to enforce their claims under the 1969 joint will (which claims were plead in the alternative to their rights under the 1973 separate will) if the 1969 joint will was held to be mutual and contractual.

A judgment declaring that the 1969 joint will and codicil are mutual and contractual does not fix the legal rights of any of the beneficiaries named in that will. The 1973 will of Ruby Hunt has been probated by order of the same trial court under separate cause number. The 1973 will technically revoked the 1969 joint will. *Tips v. Yancey*, 431 S.W.2d 763 (Tex.Sup. 1968). The 1973 will could not, however, terminate the equitable interests held by the appellees in the 1969 joint will from the time that Ruby Hunt probated it, because their interests were founded in a contract which became irrevocable upon the death of Lacy Hunt and acceptance by Ruby Hunt of the benefits of the 1969 will.

The case of *Magids v. American Title Ins. Co., Miami, Fla.*, 473 S.W.2d 460 (Tex.Sup. 1971), dealt with reciprocal wills as opposed to a joint, mutual and contractual will. Nevertheless, as to contractual wills the court stated at page 464 that:

". . . Texas authorities make a clear distinction between the wills themselves and any underlying irrevocable contracts to dispose of property at death. If the same document contains both the will and the contract, 'it is the contractual portion of the will and not the will itself which is irrevocable.' "

A beneficiary, to assert his property interests in a revoked contractual will, must seek, through equity, the imposition of an equitable trust over the property to which, according to contract, he is entitled to. *Lieber v. Mercantile Nat'l Bank at Dallas*, 331 S.W.2d 463, 473 (Tex.Civ.App.-Dallas 1960, ref'd n.r.e.); *Cate v. Cate*, 235 S.W.2d 456, 458 (Tex.Civ.App.-Dallas 1950, writ ref'd). Since the trial amendment offered by the Knolle sisters stated generally that no equitable relief was proper to affect their percentage interests under either will, we fail to see how the trial amendment could provide any relief to them. The denial of the trial amendment could not, therefore, have been an abuse of discretion.

Furthermore, appellants Knolle sisters state in their brief that a trial amendment was unnecessary "as a matter of law" to accomplish their purposes. It could not be an abuse of discretion for the trial court to deny a trial amendment after the close of the evidence when the offering party admits that the same was unnecessary to accomplish their purposes in offering it.

If the trial court's action in denying the trial amendment had been erroneous, we are of the opinion that such error would not amount to such a denial of the rights of appellants Knolle sisters as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rule 434, T.R.C.P. Appellants Knolle sisters' second point of error is overruled.

Appellees, through notice of limitation of appeal, bring one cross-point alleging that the trial court erred in holding that the property acquired by Ruby Hunt during the time she survived Lacy Hunt was not subject to the distribution scheme contained in the joint, mutual and contractual will and codicil. Appellants urge that this portion of the trial court's judgment was not erroneous, contending that the 1969 joint will and codicil controlled only over property held by Lacy and Ruby Hunt at the time of Lacy Hunt's death. Appellees contend that the 1969 joint will and codicil provided for the testamentary distribution of both community property and property acquired by the survivor after the death of the first to die. We agree with appellees.

We recognize the discussion of the Supreme Court in *Murphy v. Slaton, supra*, wherein the court stated:

"While the question is not free from difficulty, and we recognize that the makers of a joint and mutual will, or of mutual wills, have the right and power to provide that all of the property owned by the survivor at his death shall pass under and be bound by the terms of their will, we do not believe such effect should be given to mutual wills *unless the intention to do so is set forth in the will by very plain, specific and unambiguous language.* In the absence of such clearly expressed intention we feel that the better reasoning supports the rule that after-acquired property owned by the survivor in his or her individual right does not pass." 273 S.W.2d at 595 [Emphasis added.]

The 1969 joint, mutual and contractual will in this case provided that "the estate remaining in the hands of such survivor of us at the time of his or her death" should pass according to the disposition contained in the will. Were our decision controlled by these words alone, we would hold that the 1969 will did not control the disposition of after-acquired separate property.

However, Lacy and Ruby Hunt executed a codicil to the 1969 will which provided that "*all property* which said survivor may be seized or possessed at the time of his or her death" [Emphasis added] should pass to and vest in the beneficiaries according to the disposition contained in the 1969 will. There is no conflict between the will and the codicil. The codicil provided that it in no way changed or altered the will but made "additional provisions thereto." One

additional provision was, in our opinion, that all property acquired by the survivor after the death of the spouse was to be included in the joint estate irrespective of which one of them survived the other. A codicil must be considered as a part of the will, and the will and codicil are to be construed as one instrument. *Deegan v. Frost Nat'l Bank of San Antonio*, 505 S.W.2d 428, 431 (Tex.Civ.App.-San Antonio 1974, err. ref'd); *Van Hoose v. Moore*, 441 S.W.2d 597, 609 (Tex.Civ.App.-Amarillo 1969, ref'd n.r.e.). The codicil may make additional provisions or otherwise modify the existing provisions of a will. *Fitzgerald v. Agnew*, 402 S.W.2d 811, 812 (Tex.Civ. App.-Texarkana 1966, n.w.h.). In this case, even if there were a conflict between the will and the codicil, the provision in the codicil would prevail. *Thornhill v. Elskes*, 381 S.W.2d 99, 104 (Tex.Civ.App.-Waco 1964, ref'd n.r.e.); *First Christian Church of Temple v. Moore*, 295 S.W.2d 931, 933 (Tex. Civ.App.-Austin 1956, ref'd n.r.e.). It is our opinion that the language and meaning of the codicil provision is plain, specific and unambiguous and comes within the exception to the *Murphy* case, supra. Furthermore, in the recent case of *Wallace v. Turriff*, 531 S.W.2d 692 (Tex.Civ.App.-Tyler 1975, ref'd n.r.e.), this court dealt with the same issue concerning the status of after-acquired property under a joint, mutual and contractual will. The will involved in the *Wallace* case stated that ". . . *all the property*, both real and personal, that the survivor may die seized and possessed of . . ." was to go to certain individuals [emphasis added]. This court held in its majority opinion that the phrase "all the property" included property acquired by the survivor after the death of the survivor's spouse. The phrase "all property" in the codicil to the 1969 will in this case we feel is equally, if not more, controlling.

Thus it is our opinion that the court erred in holding that the appellees were the owners of equitable title to one-half of all properties owned by Ruby K. Hunt but excluding "such properties as were inherited by Ruby K. Hunt from her mother's estate," and further erred in imposing a construc-

tive trust in favor of appellees to the same extent. These portions of the court's judgment are reversed and judgment is here rendered that the appellees are the owners of equitable title to one-half of all properties owned by Ruby K. Hunt, including the property which she inherited from her mother and that the constructive trust be imposed upon all property of which Ruby K. Hunt was seized and possessed at her death, including the property which she inherited from her mother. In all other respects, the judgment of the trial court is affirmed.

Affirmed in part and reversed and rendered in part.