Elmer FISHER et al., Appellants,

v.

Mattie Evans CAPP, Appellee.

No. 9077.

Court of Civil Appeals of Texas, Amarillo.

Jan. 30, 1980.

First Motion for Rehearing Denied with Opinion March 19, 1980.

Second Rehearing Denied April 16, 1980.

Lowe & Courtney, Clarendon, Allen Harp, Williams, Broughton & Forbis, John Forbis, Childress, for appellants.

Underwood, Wilson, Sutton, Berry, Stein & Johnson, Richard F. Brown, Amarillo, for appellee.

COUNTISS, Justice.

This suit seeks construction of, and other relief based upon the joint last will and testament of decedents, Burl B. Smith and his wife, Mamie R. Smith. Appellee, Mattie Evans Capp, sister of Mamie R. Smith and a residual beneficiary under the joint will, brought suit against Elmer Fisher, a beneficiary, the other beneficiaries and the independent executor under a subsequent will executed by Mamie R. Smith.[1] Mrs. Capp prevailed in the trial court on her motion for partial summary judgment for construction of the will, and that issue was severed for appellate review.

We must resolve two questions: (1) to what extent does the failure of the beneficiaries to controvert the motion for summary judgment in writing limit their points of error in this court, and (2) what is the nature and effect of the joint instrument executed by Mr. and Mrs. Smith. We conclude that appellants are limited to the contention that the grounds expressly presented to the trial court by the movant's motion are insufficient as a matter of law to support summary judgment. We further conclude that the trial court correctly construed the instrument in question as a joint, mutual and contractual will, binding on

---

1. Hereafter, appellants will be referred to as "the beneficiaries."

Mrs. Smith from and after the death of Mr. Smith. Accordingly, we affirm the judgment of the trial court.

On June 26, 1936, Mr. and Mrs. Smith executed a joint will. The portions pertinent to this appeal read as follows:

STATE OF TEXAS  X

COUNTY OF DONLEY X  KNOW ALL MEN BY THESE PRESENTS

That we Burl B. Smith and Mamie R. Smith of Donley County Texas, each being of sound and disposing mind and memory, do make and publish this our last Will and Testament hereby especially revoking all other Wills by either of us at any time heretofore made.

\*  \*  \*  \*  \*  \*

SECOND: It is the desire of Burl B. Smith; that should I die before my wife Mamie R. Smith, then and in that event I bequeath to my beloved wife all of my Estate, both real and personal or mixed in fee simple, to have and to hold the same in her own right, with full power to sell and dispose of same, make all necessary deeds or transfers.

THIRD: It is the desire of Mamie R. Smith that should I die before my husband Burl B. Smith, then and in that event I give and bequeath to my beloved husband xxxxxxxxxxx, all of my Estate both real and personal or mixed, in fee simple, to have and to hold same in his own right, with full power to sell and dispose of same, as to him may seem best.

FOURTH: It is the joint desire and Will of each of us that the survivor of this Union shall have the use and possession of all the Estate belonging to us, or either of us, unhamperd [sic] by any claim or claims of any person or persons or the order of any Court, to the end that we may have the full enjoyment of the labor of our hands while either of us live.

FIFTH: It is the further joint xxx Will and the separate Will of each of us that should some accident take us both out of this life at the same time, or when the last survivor of this union shall have been claimed by death, that our Estate or the proceeds thereof that maybe left on hand or in existence shall be divided into two moities of equal value as nearly as can be done; one moity or share shall go to the heirs, that is father and mother, brothers and sisters of their descendants of each of us. To be more explicit one moity shall go the descendants and wife of Marion F. Smith, now deceased, being the father and mother, brother and sister of the said Burl B. Smith, and one moity to M. V. Evans and wife, and their descendants, same being father, mother, brothers and sisters, of the said Mamie R. Smith, there being no children born to this Union.

\*  \*  \*  \*  \*  \*

Mr. Smith died on February 17, 1967, and the joint will was duly admitted to probate upon the application of Mamie R. Smith.

On May 28, 1971, Mamie R. Smith executed a new will, revoking all prior wills and disposing of her estate in a manner at variance with the disposition set out in paragraph five of the joint will. Mrs. Capp, sister of Mrs. Smith, was a beneficiary under the joint will but not under the second will. Mrs. Smith died on July 10, 1972, and the second will was admitted to probate in 1973.

On August 23, 1976, this suit was filed by Mrs. Capp. Subsequently, she filed a motion for partial summary judgment, with supporting affidavits. In the motion, Mrs. Capp asked the trial court to decree (1) that the first will is a joint, mutual and contractual will by and between Burl B. Smith and Mamie R. Smith; (2) that she is entitled under the first will to her proportionate share of the combined estates of Mr. and Mrs. Smith remaining in Mrs. Smith's hands at her death; and (3) that the first will was an "election will," and that Mrs. Smith and those claiming under her are estopped from asserting that the combined estates vested in a manner inconsistent with the first will.

The beneficiaries under the second will did not file any written controverting instruments in response to the motion for partial summary judgment. Their counsel was present at the hearing on the motion, however, and presented oral argument opposing the motion.

The trial court granted the motion for partial summary judgment ruling, among other things, that the first will was joint, mutual and contractual and controlled the disposition of the portion of the combined estates of Mr. and Mrs. Smith on hand at Mrs. Smith's death. The beneficiaries under the second will present seven points of error challenging the trial court's judgment. Their first five points raise questions of limitations and laches. Their sixth point contends that the first will was not, as a matter of law, contractual and their seventh point contends, alternatively, that a fact issue exists as to whether the will is contractual.

## APPELLATE REVIEW OF A SUMMARY JUDGMENT

Before we consider this appeal on its merits, we must first determine whether the beneficiaries' points of error are properly before us, when they did not file a written response to the motion for partial summary judgment raising the points advanced here. Mrs. Capp contends the beneficiaries' failure to file a written response precludes them from presenting any issue to this court except the contention that the grounds urged by Mrs. Capp in her motion will not, as a matter of law, support the summary judgment. If this contention is correct, we can consider only whether Mrs. Capp established as a matter of law that the will is joint, mutual and contractual.

The beneficiaries reply to the foregoing argument by contending that a special exception raising limitations, presented to and overruled by the trial court over a year before the summary judgment, preserved the limitations question.

The answer to the threshold question before this court is found in rule 166–A(c) of the Texas Rules of Civil Procedure, as amended in 1978 and construed by the Texas Supreme Court in *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). Rule 166–A(c) as pertinent here reads as follows:

(c) Motion and Proceedings Thereon. The motion for summary judgment shall state the specific grounds therefor. . . . Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may serve opposing affidavits or other written response. No oral testimony shall be received at the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues as expressly set out in the motion or in an answer or any other response. *Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal* (emphasis added).

In the *Clear Creek* case, the Supreme Court carefully analyzes the foregoing portion of the summary judgment rule, its predecessors and the history of summary judgment in Texas. *City of Houston v. Clear Creek Basin Authority, supra*, at 675. The Court then concludes, "[appellant] is not entitled to defeat the summary judgment by raising a fact issue for the first time on appeal which was not expressly presented to the trial court . . . ." *Id.* at 679.

In *Clear Creek*, as in this case, the nonmovant attempted to avoid the mandate of the rule by arguing that previous pleadings filed in the case preserved the issues presented for appellate review and obviated the necessity for additional pleadings filed in direct response to the motion. *Id.* at 678. The Supreme Court responded to that argument by stating:

The new rule requires that contentions be expressly presented in the written motion or in a written answer or response to the motion, and pleadings are not to be considered in determining whether fact issues are expressly presented in summary judgment motions. The terms "answer"

and "response" as used in the context of the rule clearly refer to the motion and not to the pleadings generally. *Feller v. Southwestern Bell Tel. Co.* [581 S.W.2d 775 (Tex.Civ.App. Houston 1979, no writ)], *supra.* To hold otherwise would be to perpetuate the evil the rule change was designed to eliminate. The written answer or response to the motion must fairly apprise the movant and the court of the issues the non-movant contends should defeat the motion.

\*    \*    \*    \*    \*    \*

While it would be prudent and helpful to the trial court for the non-movant always to file an answer or response, the non-movant needs no answer or response, to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient *as a matter of law* to support summary judgment. The non-movant, however, may not raise any *other* issues as grounds for reversal. Under the new rule, the non-movant may not urge on appeal as reason for reversal of the summary judgment any and every *new* ground that he can think of, nor can he resurrect grounds that he abandoned at the hearing.

With the exception of an attack on the legal sufficiency of the grounds expressly raised by the movant in his motion for summary judgment, the non-movant must expressly present to the trial court any reasons seeking to *avoid* movant's entitlement, such as those set out in rules 93 and 94, and he must present summary judgment proof when necessary to establish a fact issue. No longer must the movant negate all possible issues of law and fact that *could* be raised by the non-movant in the trial court but were not. . . . *[T]he non-movant must now, in a written answer or response to the motion, expressly present to the trial court those issues that would defeat the movant's right to a summary judgment and failing to do so, may not later assign them as error on appeal* (emphasis added). *City of Houston v. Clear Creek Basin Authority, supra,* at 678–79. *See also Toler v. Harbour,* 589 S.W.2d 529 (Tex.Civ.App.— Amarillo 1979, writ pending).

■ The lesson of *Clear Creek* is crystal clear. If the non-movant wishes to contend on appeal that summary judgment was improperly granted, and does not file a written response to the motion for summary judgment, the only issue before the appellate court is whether the grounds expressly presented to the trial court by the movant's motion are insufficient as a matter of law to support summary judgment. Any other issue raised by the non-movant in the appellate court must have first been raised in the trial court (1) by written specific response or answer to the motion for summary judgment (2) expressly presenting the issue to the trial court.

■ We hold, therefore, that the beneficiaries' points of error one through five are not before us, because a prior pleading raising laches and limitations does not preserve those issues when they are not raised again in specific written response to the motion for summary judgment. We will only determine whether the grounds presented by Mrs. Capps' motion are insufficient as a matter of law to support the summary judgment she was granted.[2]

### THE MUTUAL AND CONTRACTUAL WILL

Mrs. Capp moved for partial summary judgment on two grounds: (1) the will is joint, mutual and contractual and (2) the will is an "election will" and Mamie R.

---

**2.** With reference to the beneficiaries' seventh point of error, we are not prohibited from ascertaining whether the summary judgment was erroneously granted because of the existence of a fact question. Absent written response and summary judgment evidence from the non-movant, however, that issue is resolved by an examination of the motion and grounds stated therein and the evidence accompanying the motion, not from an examination of other evidence not properly called to the attention of the trial court. A fact question apparent from the movant's instruments would make the grounds presented to the trial court in the movant's motion insufficient as a matter of law.

Smith and all who claim under her are estopped from asserting the combined estates of Mr. and Mrs. Smith vested in any manner inconsistent with the joint will. The trial court concluded both grounds are valid and each is advanced here by Mrs. Capp in support of the judgment. Because we believe the first ground to be correct and determinative of all questions properly before us, it is unnecessary for us to pass on the second ground.[3]

The will in question is obviously a joint will. The crucial question is whether it is joint and mutual, and thus contractually binding upon the surviving testator.[4] The burden of establishing a contract is on the party who contends the will is contractual. *Nye v. Bradford,* 144 Tex. 618, 193 S.W.2d 165, 167 (1946). The methods of proof which may be employed to discharge that burden are varied. Thus, the provisions of the will may establish the contract, competent witnesses may testify to the agreement, or both the will and extrinsic evidence may be combined to satisfy the burden. In the first situation the will may, by its terms, conclusively prove it was executed in furtherance of an agreement. In the second situation, "evidence as to declarations of the promisor, relations or conduct of the parties and other facts and circumstances, that tend to prove that an agreement was made, are admissible." *Nye v. Bradford, supra,* at 168.

There is no extrinsic evidence of an agreement before the court in this case. We must, therefore, determine whether the will, by its very terms, conclusively establishes a contract. The question is resolved by the Texas Supreme Court decisions in *Nye v. Bradford, supra ; Harrell v. Hickman,* 147 Tex. 396, 215 S.W.2d 876 (1948); *Murphy v. Slaton,* 154 Tex. 35, 273 S.W.2d 588 (1954), and *Dougherty v. Humphrey,* 424 S.W.2d 617 (Tex.1968) and the Court of Civil Appeals decision in *Knolle v. Hunt,* 551 S.W.2d 755 (Tex.Civ.App.—Tyler 1977, writ ref'd n. r. e.). In each of those cases, the spouses executed a joint will leaving some species of estate to the survivor.[5] The testators then jointly provided for the disposition of the *combined* estates remaining on hand at the death of the last to die. In each case, the court carefully examined the provisions of the joint will and concluded that each will was mutual and contractual. The reasoning common to the cases is that the joint will as a whole sets forth a comprehensive plan for disposition of the testators' property. The joint will treats the property of the testators as one, and it not only provides for disposition of the property upon the death of the first to die but also provides for disposition of the property remaining on hand at the death of the survivor. It is obvious from a reading of such a will that it was executed by the parties to carry out a planned and complete disposi-

---

3. *See Murphy v. Slaton,* 154 Tex. 35, 273 S.W.2d 588, 593 (1954) as authority for the second ground.

4. "A 'joint' will is best defined as a single testamentary instrument which contains the wills of two or more persons, is executed jointly by them, and disposes of property owned jointly, in common, or in severalty by them." " 'Mutual' wills have been defined as wills executed pursuant to an agreement between two or more persons to dispose of their property in a particular manner, each in consideration of the other." *Dickerson v. Yarbrough,* 212 S.W.2d 975, 978 (Tex.Civ.App.—Dallas 1948, no writ).

5. The first estate in each case was either a defeasible fee (*Harrell v. Hickman, supra,* 215 S.W.2d at 878; *Knolle v. Hunt, supra,* at 761) or a life estate with power of sale and various other powers annexed. The exact nature of the

first estate is not of controlling importance (provided it is not an absolute and unrestricted fee simple gift) for, as stated in *Knolle v. Hunt, supra,* at 762:

> It is of secondary importance what title the survivor receives through the contractual will. Of primary importance is the fact that the will is contractual, the testators having agreed to the disposition of the estate remaining in the hands of the survivor. The fact that a survivor holds a life estate in the remaining property may give more immediate effect to the interest of the beneficiaries as opposed to the holding of a conditional fee simple title, but the agreed disposition of the estate remaining in the hands of the survivor at death creates an obligation which is controlling over, and not restricted by, the type of title held by the survivor for the surviving period.

tion of all of their property, regardless of who should die first.

■ In summary, a joint will is mutual and contractual as a matter of law when it is apparent from reading the will that the testators jointly planned the ultimate disposition of their combined estates in a manner evidencing an intent that the survivor would carry out the ultimate disposition without alteration.

In searching for a common thread in these cases, two things become apparent. First, the gift to the survivor is not absolute and unconditional, even though it may initially appear to be so. *See, e. g., Harrell v. Hickman, supra,* 215 S.W.2d at 878. Second, the balance remaining from the estate of the first to die and the estate of the last to die is treated as a single estate and jointly disposed of by both testators in the secondary dispositive provisions of the will. By doing so, the first testator to die is exercising some control over his or her property and estate and the property and estate of the survivor. This type of jointly planned disposition is in contrast to the joint, but not mutual, will set out in *Ellexson v. Ellexson,* 467 S.W.2d 515 (Tex.Civ. App.—Amarillo 1971, no writ). In *Ellexson,* it was apparent from the will that the testators jointly planned the disposition of their estates. Each testator, however, very carefully devised life estate and remainder interests only in his or her estate and did not attempt to exercise any control over the estate of the other. Thus, the intent evidenced by each testator was to control ultimate disposition of the testator's estate, but not the other testator's estate or the combined estates.

■ Application of the foregoing analysis to the will before the court mandates the conclusion that, as a matter of law, the will is both joint and mutual and, thus contractual. After directing payment of debts, each of the testators leaves his or her estate to the survivor, apparently in "fee simple." In paragraph "Fourth," however, the testators treat their combined estates as a *single* entity and imply some limitation of the interest given each other by speaking in terms of "use and possession of all *the*

*Estate* belonging to us . . . *unhamperd* [*sic*] . . . *while either of us live* (emphasis added)." In paragraph "Fifth," the pivotal language appears. As in *Harrell v. Hickman, supra,* 215 S.W.2d at 878, a condition is placed on the estate awarded the survivor, the condition being that "*our Estate* or the proceeds *thereof that maybe* [*sic*] left on hand or in existence . . . ." shall pass as thereafter specified (emphasis added). Thus, a conditional or defeasible fee is granted the survivor, and the estates are united for final testamentary disposition. We see a comprehensive plan for disposition of all of the property of the testators, with both estates being controlled through the joint will. We are satisfied that the parties jointly planned the disposition of their combined estates with the intention that the survivor would carry out the plan. By doing so, a binding contract was created, and Mrs. Smith was not free to alter the terms of that contract after Mr. Smith's death.

The beneficiaries reply primarily on five cases for their contention that the will in question is not joint and mutual. The wills in question in *Ellexson v. Ellexson, supra,* and *Garland v. Meyer,* 169 S.W.2d 531 (Tex. Civ.App.—San Antonio 1942, no writ) are, however, obvious examples of separate wills stated jointly in one instrument. In *Magids v. American Title Insurance Co., Miami, Fla.,* 473 S.W.2d 460 (Tex.1971) there were separate wills, expressed in separate instruments with no contractual intent evident in either will, and the party seeking to establish an underlying contract simply failed to carry the burden of proof. In *Reynolds v. Park,* 521 S.W.2d 300 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.) a will superficially similar to the will in this case was involved. However, it was apparent in the *Reynolds* case that extrinsic evidence bearing on the intent of the parties was available and created fact issues forbidding the summary disposition reached by the trial court. No extrinsic evidence either supporting or contradicting our conclusion is present or alluded to in the case now before the court.

The final case, *City of Corpus Christi v. Coleman,* 262 S.W.2d 790 (Tex.Civ.App.—

San Antonio 1953, no writ) involved a will similar in principle to the will now before us, but with different language, insofar as we can determine from the portions of the will set out in the opinion. The court in that case concluded the will did not show conclusively on its face that it was executed pursuant to a contract. Here, however, we have concluded that the language of this will created a binding contract that requires the survivor to carry out the planned disposition.

Finding no error, we affirm the judgment of the trial court.

DODSON, J., not participating.

## ON MOTION FOR REHEARING

COUNTISS, Justice.

In their motion for rehearing, the beneficiaries contend, among other things, that we have given retroactive effect to rule 166–A of the Texas Rules of Civil Procedure, as amended effective January 1, 1978.

■ The motion for summary judgment was filed on November 16, 1977 and supplemented on January 20, 1978. It was heard on April 10, 1978 and decided on November 6, 1978. Within this time frame, we are satisfied the rule as amended, and as construed in *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979), is applicable to this case. Although the motion was filed prior to the effective date of the amended rule, no action was taken on the motion until April 10, 1978, over three months after the effective date of the amendments. As stated in *Hoppe v. Hughes*, 577 S.W.2d 773, 775 (Tex.Civ.App. —Amarillo 1979, writ ref'd n. r. e.):

> absent a contrary intent expressed, the rule applies from its effective date to control the subsequent steps taken in the pending litigation. *Brooks v. Texas Employers Insurance Association*, 358 S.W.2d 412, 414 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.) . . . . Indeed, one appellate court, considering the same question, has held that the appeal must be considered and treated under the procedural rules in effect at the time of the

consideration of the appeal. *Delta Brands, Inc. v. Borden Metal Products Co.*, 570 S.W.2d 1, 2 (Tex.Civ.App.—Beaumont 1978), writ ref'd n. r. e., 570 S.W.2d 876 (Tex.1978); *Logan v. Barge*, 568 S.W.2d 863, 865 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.).

The amended rule has not been applied retroactively. It has been applied from its effective date to control the subsequent steps taken in the pending litigation.

The beneficiaries also contend that a supplemental brief filed by Mrs. Capp immediately prior to submission of this case, directing our attention to the *Clear Creek* case, raised new points and theories and was filed without proper leave of court. Whether or not leave was obtained, a point disputed by Mrs. Capp, the supplemental brief was simply a discussion of a recent Texas Supreme Court decision with which this court is presumed to be familiar and is required to follow. *See Woodard v. Texas Dept. of Human Resources*, 573 S.W.2d 596, 598 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.).

The other points presented in the motion for rehearing have been fully considered by the court and found to be without merit.

The motion for rehearing is overruled.

DODSON, J., not participating.