Margaret Louise JACKSON and Verna Mae Jones, Appellants,

v.

Marjorie Jo STUTT, Douglas Jackson, Diane Hayes, Michael Jackson, Tony Jackson and Elvin Stutt, Appellees.

No. 2–87–024–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 19, 1987.

Rehearing Denied Sept. 16, 1987.

John Alan Goren and John C. Rogers, Dallas, for appellants.

Kenneth B. Kramer and Clayton S. Kramer, Wichita Falls, for appellees.

Before FENDER, C.J., and BURDOCK and FARRIS, JJ.

## OPINION

FENDER, Chief Justice.

This appeal grows out of a will construction case. The trial court admitted a 1985 will to probate; construed a 1958 will as being a joint contractual will; and impressed a constructive trust on the executrix under the later will. Six points of error are urged. We need consider only one.

The judgment of the trial court is reversed and the cause remanded for further proceedings.

A partial recital of facts will set the stage for our holding. In 1958, Tommie and Uleta Jackson executed a joint will. Uleta Jackson died in November of 1959. The joint will was probated as her will. At the time of her death, Tommie and Uleta were living on a farm which was their community property. Tommie continued to live on the farm until his death on July 1, 1985.

In 1964, Tommie married Margaret Pon Jackson and they lived on the farm at all times during the marriage. On June 18, 1985, Tommie Jackson executed the will which was admitted to probate and which left his property in trust for Margaret Jackson and his and her children. We are not concerned here with the specific provisions of the 1985 will, which is the will upon which the trial court impressed a trust to carry out the provisions of the 1958 will.

All provisions of the judgment entered in the instant cause are dependent on the holding of the trial court that the 1958 will is a joint and mutual contractual will. If this holding fails the test, the entire cause must be returned to the trial court for disposition.

The pertinent portions of the 1958 will are as follows:

### [HEADING]

That we, Tommie Jackson and Uleta Jackson ... being desirous of providing for an orderly settlement of our material affairs in event of death, do make and publish this our last will and testament, hereby revoking all wills, if any, by us heretofore made, and thereunto provide as follows:

### I.

In the event of the death of either of us, leaving the other surviving, then, after the payment of all just debts, if any, then owed by the one deceased, it is our will and we each direct that *all* of the

property and property interests *of the one deceased,* of whatever kind and character, real, personal or mixed, shall pass to and become *fully and finally vested* in that one of us who shall survive the other, so that such *survivor* shall thereafter have and hold the *full and absolute* title thereto.

## II.

Such survivor hereinabove mentioned is hereby named and appointed independent executor ... of the will and the estate of the one deceased, and no bond [etc.] ... relative to the *estate of the one deceased,* except only to probate this will [etc.].... Said executor ... is hereby vested with full and absolute power to *make final settlement of the estate of the one deceased,* as such executor ... shall in his ... sole discretion deem proper, including power of sale of any property or properties, or any interest thereof, and a *final disposition* of the proceeds thereof.

## III.

At the death of the survivor of us, all of the property and property interests *then held by such survivor,* of every kind and character, real, personal or mixed, shall pass to and become fully and finally vested in our five children, to wit ... that they shall thereafter have and hold the full and absolute title thereto. If there be *after born children* or *children of such survivor by adoption at law,* then such after born child or children or such adopted child or children shall participate with the above named of our children equally, share and share alike, per stirpes, in the *estate of the survivor* of us, as the case may be.

## IV.

In the event of the death of such survivor, then Marjorie Jo Stutt and Elvin Stutt, our daughter and son-in-law re-

spectively, are hereby named and appointed independent executrix and executor of the *will and estate of such survivor* of the two of us, without bond [etc.].... Said executrix and executor are hereby vested with full and absolute power to make final settlement of *the estate of such survivor* as such executrix and executor shall in their sole discretion deem proper, including power of sale and final disposition of any property or properties, or any interest therein, for the payment of any debts or obligations *of the estate of such survivor,* or for any other purpose related to the final settlement.... The provisions of Paragraphs III and IV hereof shall likewise be applicable in the event both of us should die at the same time.

[Signatures]

(Emphasis added).

 We here take note of our own recent decision on this self-same subject in *Jones v. Jones,* 718 S.W.2d 416 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.) and the opinion in *Fisher v. Capp,* 597 S.W.2d 393 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.) which was heavily relied upon by Justice Burdock in the *Jones* case.[1] We find from these two cases the two pronged theorem governing *contractual* wills:

(1) the gift to the survivor is not absolute and unconditional, even though it may initially appear to be so; and

(2) the *balance* remaining from the estate of the first to die and the estate of the last to die is treated as a single estate and *jointly* disposed of by both testators in the secondary dispositive provisions of the will;

coupled with a single postulate:

[T]he nature of the estate left to the survivor is not of controlling importance, provided it is not an absolute and unrestricted fee simple gift.

*Jones,* 718 S.W.2d at 418.

In the *Jones* will the original disposition was from first deceased to survivor of all property and estate of which first deceased

---

**1.** Although the will at issue in *Fisher* was executed by persons named *Smith,* cites herein will be to the *Fisher* will for convenient reference.

was seized or possessed. Survivor was given "full, complete and unconditional power of sale and/or alienation of any part of *our* Estate." *Id.* at 419. In the secondary disposition "*we* will and give all property and estate *then remaining* to *our* children [named]." *Id.*

In the *Fisher* will each spouse (in separate paragraphs) left to the survivor "all of my Estate ... in fee simple" with full power to sell, dispose, etc. The next paragraph expressed a joint purpose, to wit:

> It is the joint desire and Will of each of us that the survivor of this Union shall have the use and possession of all the Estate belonging to us, or either of us, unhamperd [sic] by any claim or claims of any person or persons or the order of any Court, to the end that we may have the full enjoyment of the labor of our hands while either of us live.

*Fisher*, 597 S.W.2d at 395. In the secondary disposition it was provided "that *our* Estate or the proceeds thereof *that maybe [sic] left on hand or in existence* shall be divided into two moities [sic]...." *Id.* (emphasis added).

■ In the will under analysis herein we note several provisions that are substantially at variance with the two preceding wills. The 1958 will provides that following the first death *all* of the property of the deceased shall be *fully and finally* vested in the survivor and that the survivor shall have *full and absolute* title thereto. The executor/executrix is directed to make a *final settlement* of the estate and a *final disposition* thereof.

■ The "secondary" disposition feature of the 1958 will provides for the passing of *all property* of the survivor to the five named children born to the first marriage. However, the secondary disposition does not set the rights of such five children. By its own terms it allows the survivor to leave the will unchanged but bring in new beneficiaries by adopting a child or children as well as providing for children born to the survivor after the first deceased is gone. There is no expression of *joint* disposition contained in sections III or IV of the 1958 will.

No authority has been cited to us and we find none to indicate that by joint and mutual will a person deceased can control the disposition of community property acquired during a subsequent marriage or even later acquired separate property accumulated by and to the surviving spouse after the first death.

Appellees rely on *Odeneal v. Van Horn*, 678 S.W.2d 941 (Tex.1984) (per curiam) to support their contention that the will in the present case is contractual. *Odeneal* is distinguishable because the first disposition in the *Odeneal* case forms a life estate for the survivor's benefit. Thus, the gift to the survivor is not absolute and unconditional as in the present case. *Id.* at 942. Additionally, though the *Odeneal* will sets forth a comprehensive plan to dispose of all the property of both parties, it does not raise the question of whether a surviving spouse's after-acquired property can be disposed of by the deceased spouse in a joint and mutual will, as in the present case.

We find nothing improper or unusual for husband and wife to agree that the first to die will leave all to the survivor, either by joint will or by separate mutual wills. We see nothing unusual in connection with mutual wills for a secondary disposition clause to prevent the survivor from dying intestate in the event he or she has failed to execute a new will. Why should such a safeguard against intestacy become improper when done in a joint will unless and until a contractual provision binds the survivor as to the *joint* estate? We find no such limiting provision of common purpose in this will.

Finding that the trial court has mischaracterized the 1958 will we must perforce hold that partial summary judgment was improvidently granted. We reverse that judgment and remand the cause to the trial court for further proceedings not inconsistent with this opinion.

## OPINION ON REHEARING

We re-affirm our judgment and original opinion. We write further only because appellees' rehearing motion asserts con-

tinuing error on our part for failure to recognize that Tommie Jackson made an "election" to probate Uleta's will, thereby binding himself to its provisions. Appellants have filed a response requesting that we write on this question. To accommodate all parties we add the following to our original opinion.

In *Graser v. Graser*, 147 Tex. 404, 215 S.W.2d 867, 870 (1948) the Supreme Court stated:

> Nor do we think the case is or could be seriously urged as one within the familiar rule of equity prevailing in this state, that where a testator disposes by will of property not his own, and the will also provides benefits for the real owner which the latter would not otherwise enjoy, such owner may by express or implied election to take under the will, cause his own property in question to be treated as if it had passed by the will. A fundamental prerequisite for the application of this rule is that the will shall purport to dispose of the property which the testator does not own. If it does not do so, there is plainly no basis for an election, and a beneficiary under the will may accordingly take whatever the will affords without any equities arising against his own property. It is also [a] prerequisite that as to the testator's intent to dispose of property he does not own, the will shall "be open to no other construction", because "The law presumes that no man will attempt a testamentary disposition of the property of others." [Citation omitted.]

*Id. See also Ellexson v. Ellexson*, 467 S.W.2d 515, 520–21 (Tex.Civ.App.—Amarillo 1971, no writ), and *City of Corpus Christi v. Coleman*, 262 S.W.2d 790, 795 (Tex.Civ.App.—San Antonio 1953, no writ) to the same effect. Based on these authorities we hold that Tommie Jackson did not make such an election as to stop him from executing a subsequent will revoking his 1958 document.