**In re ESTATE OF James Lourine JOHNSON, Sr.**

**No. 01–88–00493–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 9, 1989.

Rehearing Denied Dec. 7, 1989.

J.C. Zbranek, Zbranek & Hight, P.C., Liberty, for appellant.

E.R. Norwood, Karen McNair, Taylor & Norwood, Liberty, for appellee.

Before EVANS, C.J., and DUGGAN and O'CONNOR, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a bench trial judgment in a will contest finding that the earlier of two wills executed by a decedent was joint, mutual, and contractual. While the judgment admitted the decedent's later will to probate and appointed appellant, Dick T. Johnson ("Dick"), its proponent, as independent executor, it also imposed a constructive trust upon property in the appellant/independent executor's hands in favor of the appellee, the co-testatrix beneficiary under the earlier will. Appellant asserts two points of error in this appeal.

Appellee, Emma Jean Oldham Johnson ("Emma"), married the decedent, James Lourine Johnson, Sr. ("James"), on January 10, 1973. Both had been previously married and had several children by their prior marriages. On April 17, 1973, the two executed the undisputedly joint will (the "earlier will") here in question. In short, the earlier will provided first that, with one exception, the survivor of James and Emma would receive all of the property of the other. The exception was that it was "the will and desire" of both parties that if Emma predeceased James, her separate property acquired before her marriage to James would pass to her son by her previ-

ous marriage, Cecil Ray Oldham. Second, the will provided that, upon the surviving testator's death, all of his or her property was devised to Cecil Ray Oldham.

On May 13, 1977, unbeknownst to Emma, James executed a new will ("the later will"), which revoked the earlier will, designated appellant, Dick T. Johnson, the fifth of James' nine children, as the sole beneficiary of his estate, and appointed Dick as independent executor. James died on August 24, 1984.

It is undisputed that Emma had no knowledge or notice of the existence of James' later will until after his death, that she never agreed nor consented to James' revocation of the earlier will, that James had full testamentary capacity at the time of his execution of both wills, and that both wills were properly executed and self-proved.

After Emma and Dick filed the 1973 and 1977 wills, respectively, for probate, and each filed an appropriate contest of the other will, the two proceedings were consolidated and transferred from the county court to the district court, where a non-jury trial was held. In her contest of James' later will, Emma sought specific performance of the alleged contract embodied in the earlier will, and the imposition of a constructive trust upon property of James' estate in her favor.

The trial court's judgment recited that, as a matter of law, the earlier will of James and Emma was "a joint, mutual and contractual will ... in that it provides for disposition of all of [their] property ... in a comprehensive plan and in a particular manner, and that [it] ... is supported by consideration." The judgment further found that it would be unconscionable for Dick, the sole devisee under the later will, to take under the later will; that Emma was the equitable owner of all of James' property in Dick's hands; that Emma had performed everything on her part to be performed under the earlier will; and that she was entitled to specific performance of the contract in the earlier will. The trial court admitted the later will to probate, appointed Dick as independent executor,

and declared him to hold title to all of James' estate property as constructive trustee for the use and benefit of Emma. No findings of fact or conclusions of law were filed.

By his first point of error, Dick asserts that the trial court erred in holding Emma to be the equitable owner of all of James' property because the evidence "does not support the finding that the earlier will was joint and mutual." Thus, he argues, the earlier will was not contractually binding on James, and his later will effectively revoked the earlier one.

We understand Dick's complaint that the evidence "does not support the finding" to be an appropriate complaint of factual insufficiency of the evidence, asserted by a party who does not have the burden of proof on the issue. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). Emma conceded at trial that the provisions of the later will control unless the earlier will is shown to be joint, mutual, and contractual, such that she is entitled to specific performance of its contract as the remedy for its breach. She also concedes, as the party contending the earlier will is contractual, that she has the burden of establishing the contract. *Nye v. Bradford*, 144 Tex. 618, 623, 193 S.W.2d 165, 167 (1946); *Fisher v. Capp*, 597 S.W.2d 393, 398 (Tex.Civ.App—Amarillo 1980, writ ref'd n.r.e.).

In reviewing questions of factual sufficiency, regardless of whether the complaining party had the burden of proof on the issue, we must consider and weigh all the evidence, both that in support of and contrary to the challenged finding. The finding must be upheld unless we find that the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951); *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ).

In a trial to the court, where no findings of fact or conclusions of law are filed, the judgment of the trial court im-

plies all necessary findings of fact to support it. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). Where the implied findings of fact are supported by the evidence, it is our duty to uphold the judgment on any theory of law applicable to the case. *W.E.R.*, 669 S.W.2d at 717.

The 1973 Will recites, in its pertinent parts:

KNOW ALL MEN BY THESE PRESENTS:

THAT WE, JAMES LOURINE JOHNSON, SR., and EMMA JEAN OLDHAM JOHNSON, husband and wife, both of Liberty County, Texas, each being of sound and disposing mind, memory and understanding, in view of the uncertainty of human life and the certainty of death, and for the purpose of making the best disposition of all of our worldly affairs, do hereby MAKE AND PUBLISH this our LAST WILL AND TESTAMENT, revoking all former Wills, if any, by us heretofore made and agreeing that this is our joint and mutual will made by each in consideration of the other so doing and shall be irrevocable excepting by the mutual agreement of both.

\*　　\*　　\*　　\*　　\*　　\*

*SECOND:* It is our will and desire that the survivor of us, JAMES LOURINE JOHNSON, SR., or EMMA JEAN OLDHAM JOHNSON, as the case may be, shall, with and subject to the exceptions hereinafter made, have all of the property, real, personal and mixed and of every kind and description which either or both of us may own, jointly or separately, or to which we may be entitled, at the time of the death of the first of us, to be owned in fee simple and full ownership by such survivor, however, any of such property remaining at the time of the death of the survivor of us to pass and be owned in accordance with the provisions hereinafter set forth in this Will.

*THIRD:* (a) One of the exceptions mentioned in the foregoing paragraph hereof is that it is our will and desire that in the event Testator, James Lourine Johnson, Sr., survives Testatrix, Emma Jean Oldham Johnson, then it is the will of Emma Jean Oldham Johnson and likewise of Testator, James Lourine Johnson, Sr. that all property of every kind and description, real, personal and mixed, which was acquired by Testatrix, Emma Jean Oldham Johnson, prior to her marriage to James Lourine Johnson, Sr., on January 12, 1973, shall pass to and be owned by CECIL RAY OLDHAM, beloved son of said Testatrix.

*FOURTH:* It is our Will and desire that upon the death of the survivor of us, as the case may be, all of the property which may then be owned by such survivor, real, personal and mixed, and which said survivor shall in any wise be entitled to at such time, shall pass to, be received by and is hereby devised and bequeathed to CECIL RAY OLDHAM, beloved son of Testatrix.

■ A joint and mutual will must be the will of two or more persons contained in a single testamentary instrument, jointly executed by them pursuant to an agreement to dispose of their respective estates to each other or to third parties. *Freeman v. Freeman*, 569 S.W.2d 626, 627 (Tex.Civ. App.—Eastland 1978, no writ) (quoting Vaughn, *The Joint and Mutual Will*, 16 Baylor L.Rev. 167, 167 (1964)). For the earlier will to be contractual, it must have been executed pursuant to an agreement by the testators to dispose of all their property in a particular manner, each in consideration of the other. *Nye v. Bradford*, 144 Tex. at 624; 193 S.W.2d at 168.

The leading analysis of supreme court decisions[1] finding a contract to have been established by the terms of a joint will is *Fisher v. Capp*. There, Justice Countiss observed that the testator-spouses in each case executed a joint will "leaving some species of estate to the survivor," and

---

**1.** *Dougherty v. Humphrey,* 424 S.W.2d 617 (Tex. 1968); *Murphy v. Slaton,* 154 Tex. 35, 273 S.W.2d 588 (1954); *Harrell v. Hickman,* 147 Tex. 396, 215 S.W.2d 876 (1948); *Nye v. Bradford,* 144 Tex. 618, 193 S.W.2d 165.

"then jointly provided for the disposition of the combined estates remaining on hand at the death of the last to die." *Fisher*, 597 S.W.2d at 398.

> The reasoning common to the cases is that the joint will as a whole sets forth a comprehensive plan for disposition of the testators' property.
>
>     \*    \*    \*    \*    \*    \*
>
> In summary, a joint will is mutual and contractual as a matter of law when it is apparent from reading the will that the testators jointly planned the ultimate disposition of their combined estates in a manner evidencing an intent that the survivor would carry out the ultimate disposition without alteration.

*Id.* at 398–399.

A will may be proved to be contractual by (1) the express provisions of the document itself, and (2) extrinsic evidence. *Perl v. Howell*, 650 S.W.2d 523, 525 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). What *Fisher v. Capp* stated to be the "common thread" apparent in these cases is later described as "the two-pronged test governing contractual wills," which requires that:

> (1) the gift to the survivor is not absolute and unconditional, even though it may initially appear to be so; and
>
> (2) the balance remaining from the estate of the first to die and the estate of the last to die is treated as a single estate and jointly disposed of by both testators in the secondary dispositive provisions of the will.

*Jackson v. Stutt*, 737 S.W.2d 597, 599 (Tex. App.—Fort Worth 1987, writ denied).

The quoted provisions of the earlier will reflect that it does not grant the survivor an absolute and unconditional gift because the balance of the joint estate remaining from the estate of the first to die, and the estate of the last to die, is treated as a single estate and jointly disposed of by both testators in the secondary dispositive provisions by devise to Cecil Ray Oldham. A reading of the instrument shows clearly that James and Emma prepared a joint comprehensive plan for the disposition of their combined estates with the intention that the survivor would carry out the plan.

The quoted preamble of the earlier will does more than use salutary words describing the instrument to be "our joint and mutual will." It specifies that it is (1) a contract based upon mutual consideration in the form of mutual promises, and (2) expressly irrevocable except by mutual consent: "made by each of us in consideration of the other so doing and shall be irrevocable excepting by the mutual agreement of both."

Appellant urges in his brief, and appellee denies in hers, that Emma's testimony at trial was contradictory to the provisions of the will. We note Emma's answers on cross-examination that, when first given, appear contradictory to the provisions of the will but, when pursued, are equivocal. Because appellant did not properly request findings of fact and conclusions of law, even if there was a variance between Emma's testimony and the terms of the earlier will, all necessary fact findings are deemed found in favor of the judgment. This court must consider only the evidence most favorable to the implied fact findings supporting the judgment, and must disregard all opposing, or contradictory, evidence. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 513, 235 S.W.2d 609, 613 (1950).

The express provisions of the earlier will alone constituted sufficient evidence to show a joint and mutual will containing contractual provisions, mutual consideration, irrevocability except by mutual agreement, a comprehensive plan for the disposition of both testators' estates, and compliance with the "two-pronged test" governing contractual wills.

Appellant's first point of error is overruled.

Appellant asserts in his second point of error that the trial court erred in refusing to hold that James had the right to revoke the earlier will at any time before his own or Emma's death, even if the will was joint and mutual, and therefore contractual in nature.

He concedes that if James had survived Emma, filed the earlier will for probate,

accepted its provisions, and then made a new will, the provisions of the earlier will could be enforced by constructive trust. He urges, however, our adoption of the 1905 English rule of *Stone v. Hoskins*, P. 194 (P.1905), which holds that a contract underlying mutual wills cannot be enforced by the surviving co-testator when, as in our case, the first testator to die revoked the will during both testators' lifetimes. Appellant does not suggest any Texas case that has cited or relied upon *Stone v. Hoskins*, and we have found none.

Adoption of the *Stone v. Hoskins* doctrine would be for the purpose of furthering a public policy of preserving a testator's freedom to revoke an existing will, despite a contractual agreement not to revoke. Section 59A of the Texas Probate Code provides:

> **§ 59A.  Contract Concerning Succession**
>
> (a) A contract to make a will or devise, or not to revoke a will or devise, if executed or entered into on or after September 1, 1979, can be established only by provisions of a will stating that a contract does exist and stating the material provisions of the contract.
>
> (b) The execution of a joint will or reciprocal wills does not by itself suffice as evidence of the existence of a contract.

Tex.Prob.Code Ann. § 59A (Vernon 1980).

The very existence of such a Probate Code provision establishes that contracts not to revoke wills are not per se against public policy in Texas, but are governed by specific statutory requirements. Accordingly, we find no basis for adoption of the rule of *Stone v. Hoskins.*

Emma does not contend that the testamentary portion of the earlier will is irrevocable, only that the contractual portion is irrevocable.  Texas authorities make a clear distinction between a will and any underlying irrevocable contract contained within a will to dispose of property at death.  If the same document contains both the will and the contract, it is the contractual portion of the will that is irrevocable, not the will itself. *Freeman,* 569 S.W.2d at 628.

The earlier will was superseded by the later will, and the latter was admitted to probate.  However, the trial court recognized the validity of the underlying contractual obligations embodied in the earlier will, of James Lourine Johnson, Sr., the decedent, and Emma Johnson, and impressed a constructive trust in favor of Emma in order to provide for the specific performance of that contract.

Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.