### In the ESTATE OF Marie Novelene OSBORNE, Deceased.

#### No. 06–02–00167–CV.

Court of Appeals of Texas, Texarkana.

Submitted May 14, 2003.

Decided June 13, 2003.

Rehearing Overruled Aug. 5, 2003.

Marc C. Mayfield, Mayfield Weedon, LLP, Longview, for appellant.

Darlene Payne Smith, Crain, Caton & James, PC, Houston, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

After a hearing, the trial court granted a summary judgment in favor of Larry and Jerry Osborne and placed the real and personal property of Orlando and Marie Osborne's estate in constructive trust for their benefit. On appeal, Deleese Agee Blackmon and Carolyn Agee Robertson contend the trial court erred by finding the April 12, 1978, last will and testament of Orlando and Marie to be contractual.

■ On April 12, 1978, Orlando and Marie Osborne executed a joint will ("Joint Will").[1] According to the Joint Will, initially the survivor, and ultimately four in-

---

**1.** A joint and mutual will must be the will of two or more persons contained in a single testamentary instrument, jointly executed by them pursuant to an agreement to dispose of their respective estates to each other or to third parties. *In re Estate of Johnson,* 781 S.W.2d 390, 392 (Tex.App.-Houston [1st Dist.] 1989, writ denied). It is undisputed that the Joint Will constitutes a joint will.

dividuals identified as "our children" (or their descendants), would receive the property of the combined estate. "Our children" is defined in the Joint Will as Deleese Agee Weedon, Carolyn Agee Robertson, Jerry N. Osborne, and Larry M. Osborne. On March 21, 1981, however, Marie executed a holographic will without Orlando's knowledge or consent, giving her entire estate to her daughters, Deleese and Carolyn.

On August 30, 1996, Orlando died, and Marie subsequently offered the Joint Will for probate as a muniment of title. On April 3, 2002, Marie passed away, and Deleese and Carolyn filed an application to probate the holographic will and sought issuance of letters testamentary. Jerry and Larry filed an opposition to the application and sought to enforce the Joint Will. Deleese and Carolyn filed a motion for summary judgment, contending Marie was not contractually bound by the terms of the Joint Will. Jerry and Larry responded by filing their own motion for summary judgment, arguing the Joint Will constituted a contract and they were entitled to equal shares of Marie's estate. After a hearing, the trial court granted Jerry and Larry's motion for summary judgment and imposed a constructive trust on Marie's estate in their favor. Deleese and Carolyn bring this appeal.

■ In their only point of error, Deleese and Carolyn contend the Joint Will was not contractual, because it failed to provide for a plan of disposition on the death of the survivor. A joint will becomes contractual when it is executed pursuant to an agreement between the testators to dispose of their property in a particular manner, each in consideration of the other. *Nye v. Bradford,* 144 Tex. 618, 193 S.W.2d 165, 168 (1946); *Ellexson v. Ellexson,* 467 S.W.2d 515, 519 (Tex.Civ. App.-Amarillo 1971, no writ). The party who asserts the will is contractual has the burden of establishing that fact. *Nye,* 193 S.W.2d at 167. The contract may be established by the provisions of the will itself, or the will and extrinsic evidence may be combined to satisfy the burden. *Id.* at 168; *Fisher v. Capp,* 597 S.W.2d 393, 398 (Tex.Civ.App.-Amarillo 1980, writ ref'd n.r.e.). Because no extrinsic evidence was presented, we must determine the contractual nature of the Joint Will based solely on the language contained within the four corners of the document.

■ In order to determine if a joint will is contractual, the primary factor to consider is whether the will, as a whole, sets forth "a comprehensive plan for disposing of the whole estate of either or both" of the testators. *Novak v. Stevens,* 596 S.W.2d 848, 852 (Tex.1980); *Murphy v. Slaton,* 154 Tex. 35, 273 S.W.2d 588, 593 (1954).[2] Courts have consistently found the existence of a comprehensive plan of disposition when (1) the joint will treats the property of both testators as one estate and (2) provides for a disposition of the estate property both at the time of the first testator's death and a disposition of the remainder of the estate on the death of the survivor. It has been established that such a disposition indicates the testators intended to carry out a planned and complete disposition of all their property, regardless of who died first. *Harrell v. Hickman,* 147 Tex. 396, 215 S.W.2d 876, 878 (1948); *Nye,* 193 S.W.2d at 168; *Fisher,* 597 S.W.2d at 398–99.

---

2. Section 59A of the Texas Probate Code requires that wills drafted after September 1, 1979, can only be contractual if the language of the will expressly provides such. Tex. Prob. Code Ann. § 59A (Vernon 2003). Because the will in question was drafted before 1979, that section is inapplicable.

In the present case, the Joint Will treats the property of both Orlando and Marie as one estate. For example, the following excerpts from the will consistently use pronouns such as "our," "we," and "us":

> *We*, Orlando N. Osborne and Marie N. Osborne, husband and wife, of Harris County, Texas, being of sound mind and disposing mind ... and for the purpose of making the best disposition of *our* worldly affairs, do hereby make, and publish this *our* Last Will and Testament.
>
> . . . .
>
> It is our will that the survivor of us, Orlando N. Osborne or Marie N. Osborne, shall with the right and authority below given, have for life all real property of *our estate.*
>
> . . . .
>
> *We* give, devise and bequeath all the rest, residue and remainder of all *our property and estate* of every kind, character and description, and wherever situated, together with all property over which *we may have power or testamentary disposition at the time of our death,* pursuant to power of appointment or otherwise, and which we have not disposed of by the foregoing provisions hereof, *in equal shares to our children.*

(Emphasis added.) *See Knolle v. Hunt,* 551 S.W.2d 755, 760 (Tex.Civ.App.-Tyler 1977, writ ref'd n.r.e.). The extensive and uniform use of the plural pronouns "we," "us," and "our" evidences a clear intention of both testators to treat their property as one estate. *See Nye,* 193 S.W.2d at 168. Further, the above excerpts present clear proof that both Orlando and Marie intended to make a final disposition of their estate on the death of the survivor by bequeathing all remaining property "at the time of our death" in equal shares to their children. *See id.; In re Estate of John-*son, 781 S.W.2d 390, 392–93 (Tex.App.-Houston [1st Dist.] 1989, writ denied); *Trlica v. Bunch,* 642 S.W.2d 540, 543 (Tex. App.-Dallas 1982, no writ).

Further analyzing the various provisions in the Osbornes' will is helpful in confirming the will demonstrates a "comprehensive plan to dispose of all property" of both testators and thus makes it contractual.

In the preamble, the Osbornes stated their will's purpose as "making the best disposition of [their] worldly affairs," that is, disposing of their property. We can find in that stated purpose no reservation that any property would not be disposed of by this will. In fact, the residuary clause in paragraph IV explicitly disposes of all other property not otherwise disposed of in other provisions of the will. It is clear the Osbornes intended to dispose of all their property, that is, all of the property that either or both of them owned at their death. This supports a finding that the Osbornes intended a comprehensive plan to dispose of all their property.

In paragraph II, the will distributes the real and personal property by separate methods. First, the survivor is given a life estate in "all real property of [their] estate." There is no explicit provision in this paragraph distributing the remainder, so the remainder goes to the four children or their lineal descendants, as set out by the residuary clause of paragraph IV. We note that the life estate in all real property given to the survivor, with the remainder distributed by the residuary clause to the four children, includes the real property interests of both testators and thus clearly and completely disposes of all real property in any and all circumstances. Second, the survivor is given "all of [the testators'] personal property," but if the survivor remarries, then one half of that personal property shall be divided by the four children or their lineal descendants. Since

this gift applies to all personal property, the half thereof that is redirected on remarriage of the survivor would essentially be the half belonging to the deceased testator, leaving the survivor with only his or her personal property. The devise of personal property gives the survivor power over his or her personal property during his or her lifetime, but that is not inconsistent with the concept of a comprehensive plan. This, too, is consistent with a finding of a comprehensive plan to dispose of all property.

Paragraph III provides that, in the event of a common disaster or simultaneous death, or death of both testators within a week of each other, the four children or their descendants would share in all property of the estates. While this, viewed alone, is not necessarily probative of a comprehensive plan, it is certainly consistent with one.

Paragraph IV is the "residuary clause," distributing anything else "which [the testators] have not disposed of by the foregoing provisions" to the four children. This supports a finding of a comprehensive plan to dispose of all property.

In paragraphs II and III, but not in paragraph IV, essentially the same formulation is set out identifying the four children to ultimately take in equal shares and providing for succession if one or more of those four children predeceased the survivor. The provisions of paragraphs II and III reference the children's "lineal descendants," explaining that, if any of the four children predecease the testators, "such children of theirs [shall] take per stirpes" the share otherwise going to their predeceased parent. While it is curious that the residuary provision in paragraph IV does not contain this same contingent disposition, that does not undermine a finding of a comprehensive plan to dispose of all property, especially here, where all four children survived both testators.

Did these two testators believe when they executed this will they were setting forth a comprehensive plan disposing of all of their property? Regardless of their intent, did they do so? Based on the language in this will, we conclude they intended to and did.[3] Therefore, Marie

---

**3.** The dissent concludes that because the Osbornes' joint will did not contain an explicit phrase such as "on the death of the survivor," the joint will was not contractual. The Texas Supreme Court in *Novak v. Stevens*, 596 S.W.2d 848, 852–53 (Tex.1980), in deciding that joint will was contractual, read the will as a whole and did not focus on the presence of any particular phrase containing the word "survivor," but determined that the will "was executed to effect a planned disposition of 'all the estate of every description, real, personal, or mixed which either or both of us may own at our death.'" *Id.* at 852. That same court, in *Wiemers v. Wiemers*, 683 S.W.2d 355, 356 (Tex.1984), focused on "George and Ida's joint will and desire to distribute 'the whole of our real estate,'" not the presence of the phrase "upon the death of the survivor." Finally, in the latest word from the Texas Supreme Court on the subject, *Odeneal v. Van Horn*, 678 S.W.2d 941 (Tex.1984), found another joint will contractual. Admittedly, the

Van Horn will also had language about "upon the death of the survivor," but, again the court seemed less concerned about that phrase than about other language indicative of the overall intent of the testators. The court stated as follows:

> A joint will is contractual if it is executed by both parties and sets forth a comprehensive plan to dispose of all the property of both parties. *Novak v. Stevens*, 596 S.W.2d 848 (Tex.1980). The Van Horn will sets forth a plan to dispose of "all property, real, personal and mixed, both community and separate."
>
> *This language* is sufficient to show on its fact that Parkes and Virginia Van Horn executed their joint will pursuant to an agreement as to the distribution of their property.

*Id.* at 942 (Emphasis added.) Though the Osbornes did not use the phrase desired by the dissent, the words they chose had the

was contractually bound by the Joint Will to dispose of her estate in accordance with its terms.

■ A joint will that was also made contractual can be revoked by a subsequent will to the extent the subsequent will does not contradict the terms of the contract. *Novak*, 596 S.W.2d at 853; *Estate of Johnson*, 781 S.W.2d at 394. Accordingly, a subsequent will can be admitted to probate, but if it seeks to circumvent the terms of the contractual will, the proper remedy is to impose a constructive trust on the estate in order to enforce the contract. *Novak*, 596 S.W.2d at 853. Therefore, in the present case, the trial court properly admitted Marie's holographic will to probate. Because the holographic will contradicted the Joint Will, the trial court properly imposed a constructive trust on the estate in favor of Larry and Jerry.

For the reasons stated, we affirm the trial court's judgment.

Dissenting Opinion by Justice
CARTER.

I do not believe that the evidence establishes that the will in question is a contractual will.

The majority states that a contractual will exists when the court finds the existence of a comprehensive plan of disposition that (1) treats the property of both testators as one estate; and (2) provides for a disposition of the estate property both at the time of the first testator's death and a disposition of the remainder of the estate *on the death of the survivor.* I do not believe that this will meets the second prong of the test by evidencing a disposition of the property on the death of the survivor.

One who relies on a will as a contract has the burden of proving that the will is contractual and that it came about as a result of a mutual agreement by both parties. *Nye v. Bradford*, 144 Tex. 618, 193 S.W.2d 165, 167 (1946). However, wills which purport to be contractual "are reviewed by the courts with caution; they can be established only by full and satisfactory proof; and no presumptions or inferences will be indulged in favor of them." *Magids v. Am. Title Ins. Co.*, 473 S.W.2d 460, 464 (Tex.1971); *Bishop v. Scoggins*, 589 S.W.2d 151, 154 (Tex.Civ.App.-Tyler 1979, writ ref'd n.r.e.). The use of words such as "we," "us," and "ours" alone does not establish the contract to make a will, nor does execution of the will simultaneously before the same witnesses establish such a contract. *Morris v. Tex. Elks Crippled Children's Hosp., Inc.*, 525 S.W.2d 874, 876 (Tex.Civ.App.-El Paso 1975, writ ref'd n.r.e.).

The language of this will clearly devises to the survivor a life estate of all real property owned by the parties. However, the common thread that is present in the cases that are found to be contractual is not present in this case. Specifically, there is no provision in this will providing disposition of property "upon the death of the survivor" or words to that effect. Each of the cases cited by the majority in its opinion have such language. *See Novak v. Stevens*, 596 S.W.2d 848, 851 (Tex. 1980) ("upon the death of such survivor"); *Murphy v. Slaton*, 154 Tex. 35, 273 S.W.2d 588, 590 (1954) ("upon the death of such survivor"); *Harrell v. Hickman*, 147 Tex. 396, 215 S.W.2d 876, 877 (1948) ("[a]fter the death of both of us"); *Nye v. Bradford*, 144 Tex. 618, 193 S.W.2d 165, 166 (1946) ("upon the termination of the life estate of

same effect of disposing of all their property on the death of the survivor. We believe that is sufficient under the standard set out by the

Texas Supreme Court to render their joint will contractual.

the survivor of us"); *In re Estate of Johnson*, 781 S.W.2d 390, 391 (Tex.App.-Houston [1st Dist.] 1989, writ denied) ("upon the surviving testator's death"); *Trlica v. Bunch*, 642 S.W.2d 540, 542 (Tex.App.-Dallas 1982, no writ) ("or after the death of both of us"); *Fisher v. Capp*, 597 S.W.2d 393, 395 (Tex.Civ.App.-Amarillo 1980, writ ref'd n.r.e.) ("when the last survivor of this union shall have been claimed by death"); *Knolle v. Hunt*, 551 S.W.2d 755, 758 (Tex.Civ.App.-Tyler 1977, writ ref'd n.r.e.) ("at the death of the survivor of us").

A similar clause is not present in this will. The residuary clause does not contain a further disposition of property at the death of the survivor. This Joint Will expresses that the remainder of "our property" is devised in equal shares to our children "at the time of our death."

That clause expresses the intention of each party to make such a disposition of the residue of his or her property, but it does not bind the parties contractually. A secondary disposition after the death of the last survivor is simply not present. The first testator to die has not exercised control over his or her property and *"the property ... of the survivor." Fisher*, 597 S.W.2d at 399 (emphasis added).

Without the disposition after the death of the survivor or any extrinsic evidence, I believe that the evidence does not establish a contractual will, and I therefore respectfully dissent.