Ruth WILLIAMS and High K.
Williams, Jr., Appellants,

v.

GOOD HEALTH PLUS, INC.—
HEALTHAMERICA CORPORATION
OF TEXAS, Appellee.

No. 04–86–00516–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 16, 1987.

---

Peter Y. Henry, San Antonio, for appellants.

Thomas H. Crofts, Jr., R. Jo Reser, Groce, Locke & Hebdon, San Antonio, for appellee.

Before ESQUIVEL, REEVES and DIAL, JJ.

## OPINION

REEVES, Justice.

This is an appeal from an Order Granting Motion for Summary Judgment (and Severance) in favor of Good Health Plus, Inc.—HealthAmerica Corporation of Texas ["HealthAmerica"] against Ruth Williams and her husband. The Williamses sought damages for the allegedly negligent medical care and treatment of Mrs. Williams' right thumb nail, which became infected and had to be surgically removed. It is their contention that an issue of fact precludes the entry of the summary judgment, that is, whether HealthAmerica, a health maintenance organization [HMO], provided medical treatment to Mrs. Williams or held itself out as a provider of medical treatment.

■ In their First Amended Original Petition, Mrs. Williams and her husband alleged that HealthAmerica was negligent in "permitting unsanitary conditions to exist in the treatment areas [where the nail was treated] causing infection" and in "placing [Mrs. Williams] on a Procainamide drug without performing tests prior to placing [her] on this drug," to which they attributed Mrs. Williams' development of a lupus erythematosus condition.[1]

HealthAmerica, by way of interrogatories, asked the Williamses to state each act and failure to act which was negligence attributable to HealthAmerica. They responded:

Failure to listen to patient complaints and failure to diagnose and properly treat nail staph infections and systemic Lupus erythematous [sic], refusal of treatment. Failure to order the usual and customary lab work for a person taking the medications prescribed to monitor wellbeing of patient and to decrease chance of side effects.

Mismanagement of case of the nail to point that correct management of sys-

---

1. In addition to HealthAmerica, Mr. and Mrs. Williams have also named as defendants in this cause Ralph M. Prows, M.D.; Robert Dawson, M.D.; Laurence N. Dotin, M.D.; Parke–Davis & Company; E.R. Squibb & Sons, Inc.; and Ayerst Laboratories Research, Inc. Except for HealthAmerica, whose cause has been severed from the original proceedings, all other defendants remain in the case below.

temic lupus was impossible due to the fact steroids could not be given appropriately.

From a review of the factual allegations in Plaintiffs' First Amended Original Petition, as well as Mrs. Williams' factual responses to discovery conducted in the case, it is readily apparent that the acts and omissions alleged to constitute negligence as to HealthAmerica consist of alleged misdiagnosis and/or medical mistreatment of the condition, as well as the alleged prescribing of inappropriate medication, all of which constitute the practice of medicine.

The Medical Practice Act provides, in pertinent part, that a person shall be considered to be "practicing medicine" within the Act:

(A) who shall publicly profess to be a physician or surgeon and shall diagnose, treat, or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method or to effect cures thereof; or

(B) who shall diagnose, treat, or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method or to effect cures thereof and charge therefor, directly or indirectly, money or other compensation.

TEX.REV.CIV.STAT.ANN. art. 4495b, § 1.03(8) (Vernon Supp.1987). Moreover, the Medical Practice Act further provides that:

[i]t shall be unlawful for any individual, partnership, trust, association, or corporation by the use of any letters, words, or terms as an affix on stationery or on advertisements, or in any other manner, to indicate that the individual, partnership, trust, association, or corporation is entitled to practice medicine if the individual or entity is not licensed to do so.

TEX.REV.CIV.STAT.ANN. art. 4495b, § 3.07(e) (Vernon Supp.1987). Specific licensure requirements for the practice of medicine are set forth under Subchapter C of the Medical Practice Act, but such requirements do not provide any means by which a corporation, such as HealthAmeri-ca, could become licensed to practice medicine, as comprehended by the terms of the Act.

Additionally, article 20A.29 of the Texas Health Maintenance Organization Act, in further defining the parameters of the physician-patient relationship, states that the Act shall not be construed to:

(a) authorize any person, *other than a duly licensed physician or practitioner of the healing arts, acting within the scope of his or her license,* to engage, directly or indirectly, in the practice of medicine or any healing art, or

(b) authorize any person to regulate, interfere, or intervene in any manner in the practice of medicine or any healing art.

TEX.INS.CODE ANN. art. 20A.29 (Vernon 1981) (emphasis added). Further, article 20A.26(c) of the Texas Health Maintenance Organization Act provides that:

[n]othing in this Act shall be construed as permitting the practice of medicine as defined by the law of this state....

TEX.INS.CODE ANN. art. 20A.26(c) (Vernon 1981). The Texas Health Maintenance Organization Act also delineates the powers of the HMO to include the following:

*the furnishing of or arranging for medical care services only through physicians or groups of physicians who have independent contracts with the health maintenance organizations; the furnishing of or arranging for the delivery of health care services only through providers or groups of providers who are under contract with or employed by the health maintenance organization* ...; provided, however, that a health maintenance organization is not authorized to employ or contract with physicians or providers in any manner which is prohibited by any licensing law of this state under which such physicians or providers are licensed....

TEX.INS.CODE ANN. art. 20A.06(a)(3) (Vernon Supp.1987) (emphasis added).

HealthAmerica filed its Motion for Summary Judgment in which it contended that it could not be liable as a matter of law,

since it was incapable of practicing medicine in the State of Texas. Second, HealthAmerica attached as an exhibit to its motion the "Medical Services Agreement" entered into between Good Health Plus, Inc., and Southwest Medical Group, P.A., on September 3, 1981, to render medical services to members or subscribers enrolled at that time in Good Health Plus, Inc., including Ruth Williams. HealthAmerica thereby contends that the physicians comprising Southwest Medical Group, P.A. were independent contractors in the provision of medical services under the agreement, for whom HealthAmerica could not be liable on any theory of agency or respondeat superior. Third, HealthAmerica urged that none of the three physicians who allegedly rendered medical care and treatment to Mrs. Williams was an agent, servant or employee of HealthAmerica. Fourth, HealthAmerica contended that Parke–Davis & Company, E.R. Squibb & Sons, Inc., and Ayerst Laboratories Research, Inc., the companies which allegedly manufactured the drugs prescribed for Mrs. Williams, were not agents, servants or employees of HealthAmerica or of its predecessor Good Health Plus, Inc. Finally, HealthAmerica urged that it did not select any of the three physicians who are alleged to have been negligent to be members of Southwest Medical Group, P.A.[2] Attached as an additional exhibit was the affidavit of James M. Scoggins, Vice President and Chief Executive Officer of HealthAmerica Corporation of Texas and former President of Good Health Plus, Inc. In pertinent part, his affidavit stated as follows:

> In December of 1981, Health Plans Management Corporation of Texas contracted with GOOD HEALTH PLUS, INC. to manage GOOD HEALTH PLUS, INC. and provide a President and Medical Director and support staff. The President, JAMES M. SCOGGINS; Medical Director, LAURENCE N. DOTIN,

M.D. and all support staff were, as of December, 1981, employees of Health Plans Management Corporation of Texas and not GOOD HEALTH PLUS, INC. or its successor corporation HEALTHAMERICA CORPORATION OF TEXAS. The Medical Director, LAURENCE N. DOTIN, M.D. acts in the capacity of an administrator for GOOD HEALTH PLUS, INC. and subsequently, HEALTHAMERICA CORPORATION OF TEXAS.

> \*   \*   \*   \*   \*   \*

> There are no physicians who are paid or employed or supervised by GOOD HEALTH PLUS, INC. or HEALTHAMERICA CORPORATION OF TEXAS. Rather, GOOD HEALTH PLUS, INC. and subsequently HEALTHAMERICA CORPORATION OF TEXAS contracts with Southwest Medical Group, P.A. to provide physician-coverage for those entitled to benefits under GOOD HEALTH PLUS, INC. and subsequently HEALTHAMERICA CORPORATION OF TEXAS.

> \*   \*   \*   \*   \*   \*

> HEALTHAMERICA CORPORATION OF TEXAS and GOOD HEALTH PLUS, INC. has [sic] never represented that the physicians who are employed by Southwest Medical Group, P.A. are employed by GOOD HEALTH PLUS, INC. or HEALTHAMERICA CORPORATION OF TEXAS. [The aforementioned "Medical Services Agreement" between Good Health Plus, Inc. and Southwest Medical Group, P.A. was attached in support]. *Under this agreement, the Medical Group will employ and maintain a professional staff.... Also under this agreement, physicians 'shall be totally responsible for all medical advice to and medical treatment of members and for performance of medical services within the service area.'*

---

**2.** HealthAmerica does not seek to avoid liability on any theory that it is not responsible for the contractual obligations incurred by its legal predecessor Good Health Plus, Inc. The essence of its argument is that since both HealthAmerica and Good Health Plus, Inc., are health maintenance organizations, neither can practice medicine as a matter of law. TEX.INS. CODE ANN. art. 20A.26(c) (Vernon 1981).

At no time has GOOD HEALTH PLUS, INC. or HEALTHAMERICA CORPORA-TION OF TEXAS had any contractual or employer/employee or agency or mas-ter/servant relationship with physicians rendering care to patients such as DRS. PROWS, DOTIN and DAWSON. At no time has any person, agent, or employee of GOOD HEALTH PLUS, INC. or HEALTHAMERICA CORPORATION OF TEXAS had any right to direct and or control the work or practice of medicine by DRS. PROWS, DOTIN or DAWSON. DRS. PROWS, DOTIN and DAWSON have not been paid any wages salaries or renumeration [sic] by GOOD HEALTH PLUS, INC. or HEALTHAMERICA CORPORATION OF TEXAS for per-forming these medical services. Rather, DRS. PROWS, DOTIN and DAWSON have been employees of Southwest Medi-cal Group, P.A. and they cannot be em-ployees of GOOD HEALTH PLUS, INC. or HEALTHAMERICA CORPORATION OF TEXAS since that would violate the corporate practice of medicine prohibi-tion. [The employment agreements be-tween Southwest Medical Group, P.A. and Drs. Prows and Dawson, respective-ly, were attached as exhibits to the affi-davit] (emphasis added).

The affidavit of Mr. Scoggins further averred that there was neither any written or oral agreement "or any other basis for the exercise by GOOD HEALTH PLUS, INC. or HEALTHAMERICA CORPORA-TION OF TEXAS, its agents, servants or employees nor anyone else on its behalf of any right of control or direction of a physi-cian's medical care and treatment of a pa-tient."

■ Mr. and Mrs. Williams filed no time-ly response to the Motion for Summary Judgment, as provided under Rule 166–A, Texas Rules of Civil Procedure.[3] The Su-preme Court of Texas has defined proce-dural parameters for a non-movant who fails to file a response to a motion for summary judgment and who thereafter brings error on appeal:

> While it would be prudent and helpful to the trial court for the non-movant always to file an answer or response, the non-movant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insuffi-cient *as a matter of law* to support the summary judgment. The non-movant, however, may not raise any *other* issues as grounds for reversal. Under the new [summary judgment] rule, the non-mov-ant may not urge on appeal as reason for reversal of the summary judgment any and every *new* ground that he can think of, nor can he resurrect grounds that he abandoned at the hearing.

*City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979) (emphasis original). *See also Smith v. Baptist Memorial Hospital System,* 720 S.W.2d 618 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). In *Fisher v. Capp,* 597 S.W.2d 393 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.), one appellate court rea-soned:

> The lesson of *Clear Creek* is crystal clear. If the non-movant wishes to con-tend on appeal that summary judgment was improperly granted, and does not file a written response to the motion for summary judgment, the only issue be-fore the appellate court is whether the grounds expressly presented to the trial court by the movant's motion are insuffi-cient as a matter of law to support sum-mary judgment. Any other issue raised by the non-movant in the appellate court must have first been raised in the trial

**3.** Rule 166–A, Texas Rules of Civil Procedure, provides in part that:
> Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response.

In Plaintiff's [sic] Motion for Continuance, filed August 20, 1986, Plaintiffs' counsel con-cedes that he received the Motion for Summary Judgment on or about July 25, 1986. The hear-ing on the Motion for Summary Judgment was set for August 20, 1986, some twenty-six days following his receipt of the motion and fiat thereon. The motion for continuance was pred-icated in part on the alleged unavailability of Mr. and Mrs. Williams to sign certain affidavits in opposition to the Motion for Summary Judg-ment. The motion for continuance was denied.

court (1) by written specific response or answer to the motion for summary judgment (2) expressly presenting the issue to the trial court.

*Id.* at 397. The affirmance of a summary judgment for a defendant depends upon whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970); *Manoogian v. Lake Forest Corp.*, 652 S.W.2d 816 (Tex.App.—Austin 1983, writ ref'd n.r.e.). In the instant case, HealthAmerica established as a matter of law that it could not practice medicine, so as to be subjected to liability for the alleged failure to diagnose and properly treat the thumb nail staph infection and drug-induced lupus erythematosus condition or for failure to order the usual and customary lab work for a person taking the medications prescribed for Mrs. Williams. Any act or omission alleged to constitute negligence against HealthAmerica necessarily involves the practice of medicine, which HealthAmerica is barred from doing by statute. Moreover, the affidavit of Mr. Scoggins and the exhibits attached to the Motion for Summary Judgment demonstrate that HealthAmerica exercises no right of direction or control over either the physicians involved in the treatment of Mrs. Williams, or over Southwest Medical Group, P.A., or over any of the drug manufacturers of whose products Mrs. Williams complains. *See Sendjar v. Gonzalez*, 520 S.W.2d 478 (Tex.Civ.App.—San Antonio 1975, no writ). There is no competent proof in response to the Motion for Summary Judgment, even in the late-filed Motion for Continuance, which contains only unsigned and unsworn "affidavits" which the Williams' counsel urges would defeat the Motion for Summary Judgment.[4] The

thrust of the argument contained in the Motion for Continuance is that HealthAmerica held itself out as a practitioner of medicine. There is nothing, however, in either the First Amended Original Petition or in the sworn answers of Mrs. Williams to HealthAmerica's interrogatories to suggest that the holding-out theory existed at the time of the summary judgment hearing.

A review of the medical records of Mrs. Williams brought forward with this appeal tends to negate the argument that HealthAmerica held itself out in any manner related to the treatment and surgical removal of her right thumb nail. In fact, there are numerous progress notes in the records on Mrs. Williams' case which are written on forms provided by and bearing the professional association of "Southwest Medical Group, P.A.". In particular, Mrs. Williams on May 20, 1982, signed a "Consent to Procedure" in which the following language appears:

1. I hereby authorize Dr. *Dawson* and whomever he may designate as his assistants, to perform upon *myself* the following procedure:

   *drill nail bed*

   and if any unforeseen condition arises in the course of the procedure calling on his judgement [sic] for procedures in addition to or different from those now contemplated . [sic] I further request and authorize him to do whatever he deems advisable.

2. The nature and purpose of the procedure, possible alternative methods of treatment, the risks involved, and the possibility of complications have been fully explained by the physician named above. I acknowledge that no guaran-

---

4. No reason is offered by counsel for Mr. and Mrs. Williams as to why the proposed "affidavits" could not have been prepared and signed in the period between July 28, 1986, when he contacted them about the hearing set for July 31, 1986, on the Defendants' Motion to Contest Affidavit of Inability, and August 2, 1986, when the Williamses were scheduled to leave the country. Furthermore, no explanation is of-

fered for the delay in filing the Motion for Continuance until the very day of the hearing set on the Motion for Summary Judgment, especially where counsel concedes that he learned of the anticipated departure of Mr. and Mrs. Williams on or about July 28, 1986, some twenty-three days prior to the date set for the summary judgment hearing.

tee or assurance has been made as to the results that may be obtained.

3. I have had the opportunity to ask questions regarding the procedure and have had my questions answered to my satisfaction. I further understand that if I choose not to have the procedure performed, that this decision will in no way jeopardize my further treatment at the Southwest Medical Group, P.A.

\*　　\*　　\*　　\*　　\*　　\*

5. *I represent that I am executing this authorization solely on the basis of the explanation given to me by the physician.*

I certify that I have read and fully understand the above consent to procedure, that the expianations therein referred to were made, and that all blanks or statements requiring insertion or completion were filled in before I affixed my signature.

Date 5/20/82

Signed s/Ruth Williams

It is clear, therefore, that HealthAmerica established as a matter of law that it was entitled to summary judgment based on the grounds expressly presented in its motion. Under these circumstances, Mr. and Mrs. Williams are not entitled to claim, in the absence of a response to the motion for summary judgment or any other evidence in the record, that HealthAmerica may be liable on some theory of holding-out or ostensible agency.

Accordingly, the judgment of the trial court is affirmed.